Filed 11/6/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CAL-WESTERN BUSINESS SERVICES, INC., | B241714 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC331294) |
| v. | |
| CORNING CAPITAL GROUP et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rex Heeseman, Judge.  Affirmed.

Roger A.S. Manlin for Plaintiff and Appellant.

Law Offices of Robert S. Altagen, Robert S. Altagen, and Jason J. Allison for Defendants and Respondents.

———————————

Appellant Cal-Western Business Services, Inc. appeals from the trial court's judgment dismissing its action against respondents Corning Capital Group, Kathryn Smitham, Thomas Smitham, and Elaine Smitham.[1] Following the entry of a judgment in its favor in an underlying lawsuit, Part Properties, Inc. assigned its rights and interest in the judgment to Pacific West One Corp. At a time when its corporate powers were suspended for the failure to pay taxes, Pacific West One assigned its rights and interest in the judgment to Cal-Western. Without Pacific West One's corporate powers ever being revived, Cal-Western filed this action to enforce the judgment against Corning Capital. On its own motion, the trial court ordered that Cal-Western's complaint be stricken and the action be dismissed in its entirety because Cal-Western lacked the capacity to sue to enforce the judgment as the assignee of a suspended corporation. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 31, 1995, a judgment in the amount of $317,882 was entered in favor of Part Properties and against Corning Capital in an action filed in Los Angeles County Superior Court (the "Judgment"). On July 14, 1995, Part Properties assigned all of its rights, title, and interest in the Judgment to Pacific West One. On July 3, 2000, the Franchise Tax Board suspended Pacific West One's corporate powers, rights, and privileges for the failure to pay taxes pursuant to Revenue and Taxation Code section 23301. On August 25, 2001, while still suspended, Pacific West One assigned all of its rights, title, and interest in the Judgment to Cal-Western.

Four years later, on April 4, 2005, Cal-Western filed the instant action against Corning Capital to enforce the Judgment. As of the date the action was filed, Pacific West One's corporate status had not been reinstated and its suspension remained in effect. On February 11, 2008, following several rounds of pleadings, Cal-Western filed a

---

[1]    Kathryn Smitham is the general partner of Corning Capital and the daughter of Thomas and Elaine Smitham. For purposes of this appeal, Respondents shall be collectively referred to as "Corning Capital."

fifth amended complaint alleging causes of action for fraud, deceit, fraudulent concealment, fraudulent conveyance, abuse of process, conspiracy, constructive trust, cancellation of instrument, and declaratory relief. The gravamen of Cal-Western's complaint was that Corning Capital had not paid any portion of the Judgment, but nevertheless had caused to be filed a false and fraudulent full satisfaction of judgment for the purpose of avoiding collection of the Judgment. Cal-Western also alleged that Corning Capital had sought to conceal real property assets that could be used to satisfy the Judgment by engaging in a series of fraudulent conveyances. As the assignee of the Judgment, Cal-Western sought to recover the principal amount of $317,882 and accrued interest of $327,857.

In January 2011, the trial court held a bifurcated jury trial on whether any of the Smithams had caused, or was part of a conspiracy to cause, the full satisfaction of judgment to be filed with the court or recorded with the county recorder. The jury returned a special verdict finding that Kathryn Smitham was liable for causing the satisfaction of judgment to be both filed and recorded, but that Thomas and Elaine Smitham were not liable. Following the verdict, the trial court set a status conference and ordered further briefing to determine the remaining issues to be tried and whether Thomas and Elaine Smitham should be dismissed from the action in light of the jury's verdict.

On June 26, 2011, Corning Capital submitted a status conference brief in which it raised, for the first time, the issue of whether Cal-Western had a right to sue on the Judgment as the assignee of a suspended corporation. In support of its argument that Cal-Western was precluded from suing, Corning Capital presented evidence that Cal-Western's assignor, Pacific West One, was suspended at the time of its assignment, that its corporate powers had never been revived, and that it remained a suspended corporation. The evidence showed that Pacific West One's assignor, Part Properties, also was a suspended corporation, although it was unclear whether it was suspended at the

3

time of its assignment to Pacific West One.**²** On August 31, 2011, the trial court set the matter for a further status conference and ordered the parties to submit supplemental briefing on the issue.

On November 14, 2011, following the status conference and briefing, the trial court issued an order finding that Cal-Western lacked the capacity to sue to enforce the Judgment as the assignee of a suspended corporation. The court reasoned that "[t]he fact that [Cal-Western] is a corporation in good standing does not confer upon it the right to enforce the Judgment and maintain an action based on the same. Because Pacific West (and, perhaps, Part Properties too) was a suspended corporation at the time of the Assignment and remains a suspended corporation, [Cal-Western] is, in essence, a suspended corporation as it relates to the Judgment." The court acknowledged that a defense based on lack of capacity to sue had not been timely raised by Corning Capital, but found that the defense could still be asserted given that one or both of the assignors had been suspended for over a decade and did not appear to intend to pay the delinquent taxes owed. The court concluded that "unless and until [Cal-Western] can bring to this court proof of reviver it remains 'incapacitated' and thus . . . has no right to further pursue this lawsuit."**³**

On March 2, 2012, the trial court, on its own motion, issued an order striking Cal-Western's fifth amended complaint and dismissing the action in its entirety pursuant to Code of Civil Procedure section 436, subdivision (b). In its written order, the court

---

**²**    According to the records that were presented to the trial court, Part Properties was suspended by the Franchise Tax Board on January 3, 1994, which was prior to the entry of the Judgment in its favor and its assignment of the Judgment to Pacific West One. Part Properties also was a suspended corporation as of July 2011. However, the records did not reveal whether Part Properties' corporate status was reinstated for any period of time following the 1994 suspension.

**³**    In its November 14, 2011 order, the trial court also granted, sua sponte, a motion for judgment on the pleadings as to all causes of action alleged against Thomas and Elaine Smitham. The court found that, based on the jury's verdict, Cal-Western did not have any viable claims remaining against these two defendants.

4

stated: "As previously discussed in detail by this court, [Cal-Western] obtained the Judgment by means of an assignment from a suspended corporation. Therefore, in relation to the judgment, [Cal-Western] 'stands in the shoes' of a suspended corporation. [Citation.] A suspended corporation lacks capacity to enforce a judgment and/or maintain a lawsuit. [Citation.]" The court further noted that Cal-Western had "represented to this court that it has no intention of reviving the corporate powers of the assignor suspended corporation," and "[a]s a result, this court sees no reason why this action should be further entertained." The court also rejected Cal-Western's argument that public policy favored allowing an assignee in good standing to sue to enforce a judgment, reasoning that it would frustrate the purpose of Revenue and Taxation Code section 23301 if "a suspended corporation could evade its tax obligations but still retain the right to 'profit from' or 'enforce' its judgment by means of an assignment." On June 6, 2012, following the trial court's entry of a judgment of dismissal, Cal-Western filed a timely notice of appeal.

## DISCUSSION

Among other arguments, Cal-Western contends that the trial court erred in striking its complaint and dismissing the action in its entirety on the basis that Cal-Western lacked the capacity to sue to enforce the Judgment. Cal-Western asserts that, as a matter of statutory construction and public policy, Revenue and Taxation Code section 23301 only applies to suspended corporations, and thus, Pacific West One's lack of capacity to sue as a suspended corporation did not preclude Cal-Western from suing as an assignee in good standing. Cal-Western also argues that, even if an incapacity defense could be applied to assignees of suspended corporations, the defense was waived here by Corning Capital's failure to timely assert it. Based on the facts presented in this case, we conclude that Cal-Western lacked the legal capacity to bring an action to enforce the Judgment as an assignee, and accordingly, its action against Corning Capital was properly dismissed.

5

## I.  Standard of Review

Under Code of Civil Procedure section 436, the court "may . . . at any time in its discretion, and upon terms it deems proper: . . . [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (Code Civ. Proc., § 436, subd. (b).)  The trial court's ruling on a motion to strike a pleading under Code of Civil Procedure section 436 generally is reviewed for abuse of discretion.  (*Pacific Gas and Electric Co. v. Superior Court* (2006) 144 Cal.App.4th 19, 23; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.)  However, the proper interpretation of a statute, and its application to undisputed facts, presents a question of law subject to de novo review.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546.)

## II.  Relevant Law

Revenue and Taxation Code section 23301 provides that "the corporate powers, rights and privileges of a domestic taxpayer may be suspended" if it fails to pay "any tax, penalty, or interest . . . that is due and payable" to the Franchise Tax Board.  Except for filing an application for tax-exempt status or amending the articles of incorporation to establish a new corporate name, "a suspended corporation is disqualified from exercising any right, power or privilege." (*Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361, 1365; see also *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 217 [suspended corporation cannot "exercise the powers and privileges of a corporation in good standing"].)  Consequently, "[d]uring the period that a corporation is suspended for failure to pay taxes, it may not prosecute or defend an action [citation], appeal from an adverse judgment [citation], seek a writ of mandate [citation], or renew a judgment obtained prior to suspension [citation]." (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306; see also *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 560 [suspended corporation is "disabled from participating in any litigation activities"].)  The purpose

6

of Revenue and Taxation Code section 23301 "is to 'prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern' [citation], and to pressure it to pay its taxes [citation]." (*Grell v. Laci Le Beau Corp.*, *supra*, at p. 1306.)

Civil Code section 954 states that "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."  One commonly used method of transfer is an assignment.  (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1259.)  "A judgment creditor may assign the right represented by the judgment to a third person. [Citations.]  In doing so, the judgment creditor assigns the debt upon which the judgment is based. [Citation.]  Through such an assignment, the assignee ordinarily acquires all the rights and remedies possessed by the assignor for the enforcement of the debt, subject, however, to the defenses that the judgment debtor had against the assignor. [Citation.]" (*Great Western Bank v. Kong* (2001) 90 Cal.App.4th 28, 31-32.)  This is consistent with the general rule that "'[t]he assignee "stands in the shoes" of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment.'" (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096; see also *Bliss v. California Co-op. Producers* (1947) 30 Cal.2d 240, 250 ["an assignee of a chose in action is subject to all equities and defenses existing at or before the notice of the assignment"]; *Teater v. Good Hope Dev. Corp.* (1942) 55 Cal.App.2d 459, 462 ["an assignee of a chose in action ordinarily acquires all of the rights and remedies possessed by the assignor for its enforcement, subject, however, to the defenses which may be urged against the assignor"].)  This principle is also codified in Code of Civil Procedure section 368 which provides, in pertinent part, that "[i]n the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment."

In cases where the assignor of a chose in action is a suspended corporation, California courts generally have recognized that the assignee is subject to the same defenses that could have been asserted against the assignor.  In *Cleveland v. Gore Bros., Inc.* (1936) 14 Cal.App.2d 681, for instance, the plaintiff assignee sought to recover

7

damages arising from the wrongful eviction of her assignor by the defendant. Prior to the commencement of the action, the corporate assignor had been suspended for failure to pay taxes. The assignor's corporate status was revived during the pendency of the action, but only after the statute of limitations on the action had run. (*Id*. at p. 682.) The Court of Appeal upheld the trial court's conclusion that the assignee, "being the agent and trustee of [the assignor] for the commencement and prosecution of this action, was subject to the same incapacities with respect its commencement and prosecution as [the assignor] during the period of time that its corporate rights, privileges and powers were suspended." (*Id*. at pp. 682-683.) Because the statute of limitations was not tolled for the assignor during the period of its suspension, the same defense applied to the assignee and the action was time-barred. (*Id*. at p. 683.)

In *Thorner v. Selective Cam Transmission Co.* (1960) 180 Cal.App.2d 89, the plaintiff assignee was assigned the right to collect on certain promissory notes executed by the defendant and payable to the assignor. The assignor was a foreign corporation not authorized to do business in California and was barred by former Corporations Code section 6801 from maintaining an action in the state. (*Id*. at p. 90.) In rejecting the assignee's argument that the statute, on its face, did not preclude an action by an assignee, the Court of Appeal held that "an assignee of a foreign corporation is barred from suing where the corporation would be barred for failure to comply with the requirements for doing business in the state." (*Id*. at p. 93.) The court reasoned that "to permit an assignee for collection to sue where the corporation is barred by the statute from doing so would so obviously frustrate the purpose of the statute that we are unwilling to place such a narrowly technical construction upon it." (*Ibid*.)

III.     **Cal-Western's Incapacity to Sue as the Assignee of a Suspended Corporation**

In this case, we conclude that the trial court did not abuse its discretion in striking the fifth amended complaint based on Cal-Western's lack of capacity to file and maintain the instant suit. As the assignee of the Judgment, Cal-Western acquired all the rights and remedies possessed by the assignor for enforcement of the Judgment, subject, however,

8

to any defenses that existed against the assignor at or before the notice of the assignment. At the time Pacific West One assigned the Judgment to Cal-Western by a private agreement between the parties, Pacific West One's corporate powers and privileges had been suspended for failure to pay taxes, and it was thus barred from bringing an action to enforce the Judgment under Revenue and Taxation Code section 23301. At the time Cal-Western filed the instant action on the Judgment four years later, Pacific West One's corporate powers had not been revived and it remained a suspended corporation lacking capacity to file or maintain a suit. Therefore, because a defense based on lack of capacity to sue existed at the time of notice of the assignment and could have been asserted against Pacific West One had it brought the action itself, Cal-Western was subject to the same defense in suing to enforce the Judgment as Pacific West One's assignee.

We further conclude that the trial court did not abuse its discretion in deciding to relieve Corning Capital of its failure to timely raise the defense. A defense based on a suspended corporation's lack of capacity to sue "'is a plea in abatement which is not favored in law, is to be strictly construed, and must be supported by facts warranting the abatement' at the time of the plea.'" (*Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370.) In addition, "a plea in abatement such as lack of capacity to sue 'must be raised by defendant at the earliest opportunity or it is waived. . . .'" (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604). However, "[i]n the unusual circumstance where a corporation announces that it does not intend to pay its delinquent taxes, the trial court may properly relieve a defendant from his waiver and permit him to assert the corporation's lack of capacity to sue. [Citation.]" (*Id.* at p. 1605; see also *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc., supra,* 136 Cal.App.4th at p. 226.) Although Corning Capital did not timely raise the lack of capacity to sue as a defense in any of its responsive pleadings,[4] the trial court observed that Pacific West One

---

[4]     Corning Capital did assert the lack of standing to sue as an affirmative defense in its answer to the original complaint. However, "'[t]here is a difference between the *capacity* to sue, which is the right to come into court, and the *standing* to sue, which is the right to relief in court.' [Citation.] 'Incapacity is merely a legal disability, such as

had been suspended for over a decade and its corporate status had never been reinstated. Cal-Western also had represented to the trial court that it had no intention of reviving the corporate powers of Pacific West One by paying its delinquent taxes. Based on these facts, the trial court reasonably could find that Corning Capital's failure to assert Cal-Western's lack of capacity to sue earlier in the litigation did not bar the defense.

Cal-Western argues that the assignment of the Judgment by Pacific West One was a valid and enforceable contract and was not subject to collateral attack by Corning Capital as a non-party to the agreement. In support of this argument, Cal-Western cites to Revenue and Taxation Code section 23304.1 which states that "[e]very contract made in this state by a taxpayer during the time that the taxpayer's corporate powers, rights, and privileges are suspended . . . shall . . . be voidable at the instance of any party to the contract other than the taxpayer," and section 23304.5 which provides that "[a] party that has the right to declare a contract to be voidable . . . may exercise that right only in a lawsuit brought by either party with respect to the contract. . . ." (Rev. & Tax. Code, §§ 23304.1, subd. (a), 23305.5.) However, in ruling that Cal-Western could not sue to enforce the Judgment, the trial court never concluded that Pacific West One's status as a suspended corporation rendered the assignment void. To the contrary, the trial court expressly recognized that the validity of the assignment was "irrelevant to the issues before this court." The relevant issue was not whether Pacific West One had the capacity to *contract* as a suspended corporation, but whether Cal-Western had the capacity to *sue* on an assignment that was made when its assignor was suspended. For the reasons discussed, the trial court correctly concluded that Cal-Western lacked the capacity to bring to an action to enforce the Judgment under such circumstances.

Cal-Western further asserts that public policy considerations favor allowing an assignee corporation that is in good standing to sue to enforce a judgment regardless of

infancy or insanity, which deprives a party of the right to come into court. The right to relief, on the other hand, goes to the existence of a cause of action. It is not a plea in abatement, as is lack of capacity to sue.' [Citation.]" (*Color-Vue, Inc. v. Abrams*, *supra*, at p. 1604, fn. omitted.)

whether the assignor corporation was in good standing at the time the assignment was made. Cal-Western reasons that the purpose of Revenue and Taxation Code section 23301 is to motivate delinquent corporations to pay their taxes, and that such purpose is not served by punishing assignees that have complied with their own tax obligations. However, as the trial court observed, if an assignee of a claim by a suspended corporation were not subject to the same incapacity defense as the assignor, then a suspended corporation simply could sell its claim to a third party without ever having to cure the default that caused the suspension. In such a case, the assignment would allow the suspended corporation to circumvent the restrictions imposed by the Revenue and Taxation Code on litigation-related activities and would remove the statutory incentive that is in place to induce the corporation into paying its delinquent taxes.

Cal-Western also contends that it would be unduly burdensome for an assignee to ensure that every assignor in the chain of title of a judgment has the capacity to enforce the assigned rights. Yet we fail to see how it would have placed an undue burden on Cal-Western to confirm whether Pacific West One was a suspended corporation at the time of its assignment, particularly since it appears all three corporations involved in assigning the Judgment in this case shared some of the same principals or attorneys, and therefore, should have been able to readily determine the assignor's corporate status. Finally, Cal-Western argues that Corning Capital should not be allowed to benefit from its wrongful conduct in filing a false and fraudulent satisfaction of judgment in the underlying action. However, this court rejected a similar argument in *Timberline, Inc. v. Jaisinghani*, *supra*, 54 Cal.App.4th 1361, 1368, where we concluded that a suspended corporation which lacked the capacity to renew a judgment could not invoke the doctrine of unclean hands against the judgment debtor. As this court explained, "[w]hile we may disapprove of [the debtor's] action, we are not free to interject equitable doctrines into what is otherwise a comprehensive statutory scheme specifying the requirements and powers of California corporations." (*Ibid.*, fn. 5.)

Based on the totality of circumstances in this case, the trial court did not err in concluding that Cal-Western lacked the legal capacity to sue to enforce the Judgment as

the assignee of a corporation that was suspended at the time of the assignment and remained suspended at the time of the instant suit. The trial court's order striking Cal-Western's fifth amended complaint and dismissing the action in its entirety was accordingly not an abuse of discretion.[5]

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


SEGAL, J.[*]

---

[5]    In light of our conclusion that the entire action was properly dismissed based on Cal-Western's lack of capacity to sue, we need not address Cal-Western's remaining arguments on appeal.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.