Filed 5/29/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| ARTURO RUBINSTEIN, | B291116 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC630004) |
| v. | |
| PARIS P. FAKHERI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael J. Raphael, Judge.  Affirmed.

Lebedev, Michael & Helmi, Gennady L. Lebedev, Sam Helmi and Genevieve Bourret-Roy for Defendant and Appellant.

Tesser | Grossman, Brian M. Grossman and Frank R. Trechsel for Plaintiff and Respondent.

_____

Paris P. Fakheri appeals from a judgment against him following a court trial. We affirm.

The trial court found that respondent Arturo Rubinstein loaned Fakheri $874,708.44, which Fakheri never repaid. Fakheri does not dispute that he received the money, but he argues that it came from entities controlled by Rubinstein rather than from Rubinstein himself. Although those entities assigned their interests in the loan to Rubinstein, the entities' corporate powers were suspended at the time of the assignments. Fakheri therefore claims that Rubinstein did not have "standing" to sue.

The trial court found that Fakheri waived this defense because he did not raise it until trial. That finding was within the court's discretion. Rubinstein stood in his entities' shoes with respect to the rights he could exercise by assignment. But the issue is one of capacity to sue, rather than standing or jurisdiction. The defense of lack of capacity is waived if not asserted at the earliest opportunity. Fakheri failed to do so here.

Fakheri also argues that the trial court erred in finding for Rubinstein on his common count claim for money lent because Fakheri did not personally request the loan. Rather, Rubinstein provided the money to Fakheri at the request of a mutual business associate of his and Fakheri's, Yoram Yehuda.

We reject the argument. The trial court properly concluded that proof of an implied promise to repay was legally sufficient for Rubinstein's common count claim. The trial court's finding that Fakheri made such an implied promise is based on substantial evidence. That evidence included Yehuda's request that Rubinstein loan the money to Fakheri; Fakheri's receipt of the money directly from Rubinstein after providing wiring

2

instructions to Yehuda; and the lack of any other reasonable explanation for the transfer.

## BACKGROUND

### 1.     The Loan[1]

Rubinstein and Yehuda were friends and business associates.  Yehuda is a contractor.  The two had invested together in various real estate projects.

Rubinstein had heard of Fakheri through Yehuda from a prior real estate transaction, but Rubinstein had not met him.  In November 2013, Yehuda asked Rubinstein to lend money to Fakheri so that Fakheri could purchase a house from Yehuda.  The house was on Boris Drive in Encino (the Boris Property).  The arrangement that Rubinstein and Yehuda discussed was that the money would be repaid, without interest, once Yehuda had renovated the Boris Property and it had been sold.  Rubinstein agreed to the loan because of his close relationship with Yehuda at the time.

Rubinstein provided the money to Fakheri through wire transfers and checks from various sources.  Fakheri provided his account information for the wire transfers to Yehuda, who gave that information to Rubinstein.

One payment of $383,532.28 was wired to Fakheri from "Rick O'Hara & Associates" (O'Hara).  A company that Rubinstein owned, Lanark MK LLC (Lanark), borrowed that money from O'Hara to provide to Fakheri.  Yehuda told

---

[1] Consistent with the standard of review governing our consideration of the evidence supporting the trial court's decision, we summarize the evidence in the light most favorable to Rubinstein as the prevailing party.  (See *People v. Avila* (2009) 46 Cal.4th 680, 701 (*Avila*).)

3

Rubinstein that Fakheri would make the payments to O'Hara on the loan. Fakheri made one $100,000 payment. However, Rubinstein repaid the rest of the amount due on the loan himself after he and Yehuda had a falling out.

Another large payment of $471,863 was wired to Fakheri from an account belonging to another entity that Rubinstein owned, 19111 Wells Dr., LLC.[2] Fakheri received the remainder of the money for the loan in the form of checks from Wells made out to him and signed by Rubinstein.

Fakheri purchased the Boris Property and Yehuda renovated it. Fakheri sold the property in December 2014. After the sale, Fakheri paid approximately $1.3 million to Yehuda.

Fakheri testified that he believed the money he received from O'Hara to purchase the Boris Property was a loan that Yehuda had arranged and that Fakheri was obligated to repay to Yehuda. Fakheri further testified that the $471,863 he received from Wells was the repayment of a loan that Fakheri had previously made to Yehuda.

Other than the $100,000 that Fakheri repaid on the loan from O'Hara, Fakheri did not repay anything to Rubinstein.

---

[2] According to the reporter's transcript, Rubinstein testified that the wire came from "19111 *West* Drive, LLC." This appears to be a transcription error. Both parties describe the origin of that transfer as 19111 *Wells* Dr., LLC (Wells), a company that Rubinstein owned and managed. The wire transfer itself was apparently introduced as an exhibit at trial, but neither party included the exhibits in the appellate record or requested that the trial court provide them to this court. (See Cal. Rules of Court, rule 8.224(a)(1).) As the point is undisputed, we accept the parties' representation that the source of the transfer was Wells.

4

## 2.    The Lawsuit

Rubinstein filed his complaint (Complaint) in this case against Fakheri on August 9, 2016.  The Complaint alleged one common count claim for "money lent."

Fakheri filed a general denial.  The general denial asserted the statute of limitations as an affirmative defense but not standing or the lack of capacity to sue.

The parties tried Rubinstein's common count claim to the court on March 7 and 8, 2018.  At trial, Rubinstein introduced evidence that Lanark and Wells had assigned their claims against Fakheri to Rubinstein.

Just before the conclusion of trial, Fakheri filed a request for judicial notice of a document from the California Secretary of State showing that the corporate powers of Lanark and Wells were suspended.  The trial court kept the defense case open pending receipt of a certified copy of the document, which Fakheri submitted several days later.

In his written closing argument, Fakheri claimed that Rubinstein lacked "standing" to sue.  Fakheri argued that the money Fakheri received for the Boris Property transaction came from Wells and Lanark, not Rubinstein, and that Rubinstein's claim therefore belonged to those entities.  Fakheri argued that, as an assignee of the corporate claims, Rubinstein was subject to the same defenses as the corporate assignors.  Fakheri claimed that the corporate powers of Lanark and Wells, including the right to file a lawsuit, were suspended at the time they assigned their claims to Rubinstein, and that Rubinstein therefore also did not have the right to sue.

On May 14, 2018, Rubinstein filed a request for judicial notice of documents from the Secretary of State showing that, as

5

of April 25, 2018, both Lanark and Wells were again active and in good standing.

On June 20, 2018, the trial court issued a written "Verdict Following Court Trial."[3] The court first granted the requests for judicial notice of both Fakheri and Rubinstein. The court overruled Fakheri's objection to the reopening of evidence for the purpose of receiving Rubinstein's documents from the Secretary of State, observing that Fakheri's " 'standing' defense involving the capacity of [Wells and Lanark] to assign their claims to Rubinstein was not raised until trial."

The trial court denied Fakheri's standing argument on the same ground. The court explained that "[s]tanding does not appear among the 36 mainly-boilerplate affirmative defenses in the Answer, so it is waived." The court also found that "Rubinstein in fact provided the loan money and his companies were merely accounts he used to draw money from in the transactions, so Rubinstein may properly recover personally."

On the merits, the trial court found that Rubinstein provided the $874,708.44 to Fakheri as a loan. The court also found that the evidence showed an implied promise by Fakheri to repay the loan. The court reasoned that "[i]n the basic situation of an intermediary-arranged loan at issue here, the lendee will be unjustly enriched (and the lender unjustly deprived of repayment) if the Court does not enforce an implied promise to repay." The court concluded that such an implied promise was

---

[3] The court explained that "[n]either party requested a statement of decision, but this Court's practice is to explain the essentials of any verdict it renders after a bench trial."

all that was necessary to prove a common count claim for money lent.

The court indirectly addressed Fakheri's defense that he thought the money came from Yehuda. The trial court explained that an implied promise to repay might be inequitable if an intermediary (such as Yehuda) communicated different loan terms to the lender and to the recipient of the loan. However, the court stated that it was "not convinced there is any inequity in ordering repayment from Fakheri." The court also concluded that, "to the extent there might be" such inequity, it was mooted by Fakheri's testimony that Yehuda had agreed to indemnify him.

The trial court found that Rubinstein had conceded "that $100,000 of the $874,708.44 transferred as a loan was repaid." The trial court therefore awarded $774,708.44 to Rubinstein along with prejudgment interest, for a total judgment of $874,550.32.

## DISCUSSION

### 1. Fakheri Forfeited His Defense that Rubinstein Lacked Capacity to Sue

Fakheri claims that the trial court erred in finding that he forfeited his defense concerning the suspension of Wells's and Lanark's corporate powers. He argues that the defense concerns Rubinstein's standing to sue, which may be asserted at any time.

We independently review Fakheri's legal argument that his defense raised an issue of standing that could not be forfeited. (See *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774 (*Robbins*) [question of law concerning the court's jurisdiction over a claim reviewed de novo].) We review for abuse of discretion the trial court's ruling that Fakheri did not timely raise the defense.

7

(*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 312 (*Cal-Western*).)

Fakheri's argument that Rubinstein lacked *standing* to sue is wrong. Even assuming that the claim Rubinstein asserted belonged to Wells and Lanark rather than to Rubinstein personally, he acquired the right to sue by virtue of the entities' assignments of their claims.[4]

It is immaterial that the corporate powers of Lanark and Wells were suspended at the time they made the assignments. A contract made by a suspended corporation is not void, but is only voidable "at the instance of any party to the contract other than the taxpayer." (Rev. & Tax. Code, § 23304.1, subd. (a).) A party to the contract may exercise its right to declare a contract void only by seeking that relief in a lawsuit, subject to the requirement that the corporate taxpayer be allowed "a reasonable opportunity to cure the voidability." (Rev. & Tax. Code, § 23304.5.) As a nonparty to the assignments, Fakheri had no right to challenge their validity. (*Ibid.*; *Cal-Western, supra,* 221 Cal.App.4th at p. 313.)[5]

---

[4] In light of our disposition, we need not consider the trial court's alternative finding that the claim at issue belonged to Rubinstein personally rather than to the entities that he owned and managed.

[5] Fakheri cites *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 for the proposition that a borrower can challenge an assignment to which he is not a party "when the defect alleged would deprive the assignee of any legitimate authority to act on the assignment." That principle does not apply here. In *Yvanova,* our Supreme Court held that the

8

Fakheri is correct that, as an assignee, Rubinstein was subject to the same defenses that applied to the assignors prior to notice of the assignments. (*Cal-Western, supra,* 221 Cal.App.4th at pp. 310–312; Code Civ. Proc., § 368.) However, a suspension of corporate powers only affects a corporation's *capacity* to sue, not its standing. A party that lacks standing lacks the right to seek relief, which " 'goes to the existence of a cause of action.' " (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604 (*Color-Vue*), quoting *Parker v. Bowron* (1953) 40 Cal.2d 344, 351.) In contrast, the lack of capacity to sue is simply a legal disability that " 'deprives a party of the right to come into court.' " (*Color-Vue*, at p. 1604, quoting *Parker*, at p. 351.)

A defense based on a party's lack of capacity to sue can be forfeited. (*Color-Vue, supra,* 44 Cal.App.4th at p. 1604.) Specifically, "[a] defense based on a suspended corporation's lack of capacity to sue ' "is a plea in abatement which is not favored in law, is to be strictly construed and must be supported by facts

borrower on a home loan secured by a deed of trust has the right to challenge an assignment of the deed of trust and the underlying note by means of a wrongful foreclosure action when the assignment is allegedly "*void*, and not merely voidable at the behest of the parties of the assignment." (*Id.* at p. 923, italics added.) The court carefully distinguished between a transaction that is void and one that is only voidable. The court explained that "[w]hen an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so." (*Id.* at p. 936.) As discussed above, an assignment by a suspended corporation is merely voidable, not void.

warranting the abatement" at the time of the plea.' " (*Cal-Western, supra,* 221 Cal.App.4th at p. 312, quoting *Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370.) Such a defense " ' "must be raised by the defendant at the earliest opportunity or it is waived." ' " (*Cal-Western*, at p. 312.)

In *Cal-Western*, the court concluded that the defendant was excused from timely raising the defense based upon an exception that applies in the " 'unusual circumstance where a corporation announces that it does not intend to pay its delinquent taxes.' " (*Cal-Western, supra,* 221 Cal.App.4th at p. 312, quoting *Color-Vue, supra,* 44 Cal.App.4th at p. 1604.) That exception does not apply here; in fact, Rubinstein actually restored his corporations to good standing soon after Fakheri raised the defense.[6]

---

[6] In in its recent opinion in *Wanke, Industrial, Commercial, Residential, Inc. v. AV Builder Corp.* (2020) 45 Cal.App.5th 466 (*Wanke*), Division One of the Fourth Appellate District observed in a footnote that the defendant in that case did not waive the defense of lack of capacity even though the defendant first raised the defense in its trial brief. (*Id.* at p. 475, fn. 5.) The plaintiff in that case was a judgment creditor that asserted a claim against a third party to recover a debt that the third party owed to the judgment debtor. (*Id.* at pp. 470–471.) The judgment debtor's corporate powers had been suspended, and the defendant argued that the plaintiff therefore lacked the right to sue because its right was derivative of the judgment debtor's rights under assignment principles. (*Id.* at p. 474.) The court concluded that the defendant was not required to assert the defense of lack of capacity in its answer, reasoning that the defense the defendant asserted was not actually lack of capacity but rather "that assignment principles prevent it from maintaining its suit." (*Id.* at p. 475, fn. 5.)

10

Fakheri did not raise a defense based upon the suspension of the corporate powers of Wells and Lanark until the conclusion of trial.  Had he asserted the defense earlier, Rubinstein would have had the opportunity to restore his corporations' powers earlier.

Fakheri argues that his failure to assert the defense before trial was excused because Rubinstein alleged that he *personally* provided the money that Fakheri received and only relied upon the assignments at trial.  But Rubinstein was not required to

---

The observation was dictum.  The court actually held that assignment principles did not apply to the plaintiff because the plaintiff acquired its right to sue through a creditor's suit statute that did not require an assignment. (*Wanke, supra*, 45 Cal.App.5th at pp. 476–477; see Code Civ. Proc., § 708.280.)  To the extent that the footnote could be read to state a rule that a defendant cannot forfeit a defense to an assignee's claim that exists only because of the corporate status of the assignor, we respectfully disagree.  That rule would be inconsistent with the holding in *Cal-Western.* (See *Cal-Western, supra,* 221 Cal.App.4th at p. 313 [defendant failed to timely raise the defense of lack of capacity in response to the complaint filed by the assignee of a suspended corporation].)  It would also be inconsistent with the assignment principles underlying that holding.  An assignee "stands in the shoes" of the assignor for purposes of the defense of lack of capacity. (*Id.* at pp. 310–311.)  We can see no reason why a defendant should be excused from timely asserting such a defense to the claim of an assignee when the defendant would have been required to assert the defense at the earliest opportunity if the claim had been brought directly by the assignor.  Indeed, notice to the plaintiff of the defense is arguably more important when the plaintiff is an assignee.  An assignee is less likely to be aware of the corporate status of an assignor than the assignor itself.

11

anticipate defenses that Fakheri did not assert. Rubinstein's primary theory throughout the case was that he loaned the money to Fakheri personally. In fact, the trial court accepted that argument in its written decision. Fakheri raised as a *defense* that Rubinstein's claims actually belonged to Wells and Lanark. In response to evidence that Wells and Lanark had assigned any claims they might have had to Rubinstein, Fakheri then raised the further defense that Wells and Lanark were suspended. Fakheri's delay in asserting his lack of capacity defense was not excused by Rubinstein's failure to allege facts responding to an affirmative defense that Fakheri never pleaded.

Fakheri does not provide any other explanation for his delay in asserting lack of capacity as a defense. He does not claim that he was unaware that he received the money from corporate accounts rather than from Rubinstein directly. Indeed, he testified that he received the $471,000 wire transfer and a check from Wells. Fakheri must also have been aware of the assignments before trial, as they appeared on Rubinstein's exhibit list. Yet Fakheri did not move to amend his answer and did not seek leave from the trial court to assert a lack of capacity defense. The trial court did not abuse its discretion in ruling that Fakheri's defense was untimely.[7]

---

[7] The trial court stated that Fakheri waived his "standing" defense because he did not assert it in his answer. But the trial court clearly intended to include the defense of lack of capacity under that label. In granting Rubinstein's posttrial request for judicial notice of Wells's and Lanark's revival, the trial court noted that Fakheri's " 'standing' defense involving the capacity of these companies to assign their claims to Rubinstein was not raised until trial."

## 2. Fakheri Forfeited His Statute of Limitations Defense

Fakheri argues that Rubinstein's claim was barred by the statute of limitations. Fakheri asserts that the statute of limitations had run before Rubinstein revived the corporate powers of Wells and Lanark and that a lawsuit filed by Rubinstein as the assignee of those entities therefore did not toll the statute.

Fakheri has forfeited that argument. Although Fakheri asserted the statute of limitations as an affirmative defense in his answer, he did not raise it at trial. We decline to consider an argument that Fakheri did not make below. (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1065–1066; *Curcio v. Svanevik* (1984) 155 Cal.App.3d 955, 960 ["The general rule is that a party to an action may not for the first time on appeal change the theory upon which the case was tried"].)[8]

---

[8] At oral argument, Fakheri argued that he did not have an opportunity to raise the statute of limitations defense at trial because Rubinstein did not provide evidence that his corporations' powers had been revived until Rubinstein's rebuttal argument after trial. But there is no reason Fakheri could not have raised the statute of limitations defense at the same time he requested judicial notice of the fact that the corporate powers of Lanark and Wells had been suspended. His statute of limitations defense stems directly from the suspension; Fakheri's argument is that a lawsuit filed while a corporation lacks capacity to sue does not toll the statute. In any event, Fakheri filed an objection to Rubinstein's May 14, 2018 request for judicial notice of the Secretary of State documents showing that Lanark and Wells had been restored to good standing. He could have raised the

Moreover, even on appeal Fakheri did not raise his statute of limitations argument until his reply brief. For obvious reasons of fairness, points raised for the first time in a reply brief will ordinarily not be considered. (*See Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765.) Fakheri does not provide any explanation of his decision to raise the statute of limitations argument for the first time on reply. His failure to make the argument in his opening brief provides another ground to conclude that he has forfeited the argument.

3.     **The Trial Court Did Not Err in Finding an Implied Promise that Fakheri Would Repay the Loan**

   a.     ***The trial court correctly ruled that Rubinstein did not have to prove that Fakheri personally requested the loan***

Fakheri argues that a cause of action for money lent requires proof that the recipient of a loan specifically requested it. As this is a legal issue, we review it de novo. (See *Robbins, supra*, 22 Cal.App.4th at p. 1774.)

A claim for "money lent" is one of the common counts. (*Moya v. Northrup* (1970) 10 Cal.App.3d 276, 278–279 (*Moya*).) The common counts arose from the action of assumpsit in the common law. Such an action permitted a plaintiff to recover money that, under the circumstances, the defendant should be required to repay to avoid inequity. (*Philpott v. Superior Court* (1934) 1 Cal.2d 512, 518–519 (*Philpott*); see 4 Witkin, Cal. Procedure (5th ed. 2020) Pleading, § 553.)

---

statute of limitations defense in that objection or requested leave for further briefing on the issue. He did not do so.

A common count claim broadly applies "wherever one person has received money which belongs to another, and which in 'equity and good conscience,' or in other words, in justice and right, should be returned." (*Philpott, supra,* 1 Cal.2d at p. 522, quoting Page on Contracts, vol. 3, pp. 2510–2512, § 1473.) The claim does not require privity of contract. Although the plaintiff's right to recover under a common count is based on equitable principles, the claim is legal in nature. (*Philpott*, at p. 522, citing Page on Contracts, at pp. 2510–2512.)

Fakheri does not cite any authority holding that the common count claim for money lent requires an express request for the loan. The cases that Fakheri cites support the conclusion that a common count claim *can* be alleged for money paid out or loaned at the defendant's specific request. However, those cases do not *require* such a request as an element of the claim.

For example, in *Moya,* the court merely observed that the principles permitting conclusory pleading of common count claims apply to "a common count for moneys paid, laid out, expended, loaned or advanced to and for the defendant by the plaintiff at the former's instance and request." (*Moya, supra,* 10 Cal.App.3d at p. 280.) The court did not hold that such a request was necessary to state a claim. Indeed, in describing the nature of a common count claim, the court emphasized the flexible equitable principles underlying it: "The obligation to pay is rested upon the equitable principle of preventing unjust enrichment as applied to the particular circumstances which have arisen between the parties." (*Id.* at p. 281.)

*Provident Mutual Building-Loan Association v. Davis* (1904) 143 Cal. 253 involved a cause of action based upon an express contract rather than a common count. In the course of

distinguishing a common count case that the appellant had cited, the court simply explained that the traditional common count allegation that "moneys were paid out and expended at the special instance and request of defendant" could "still be used to state a cause of action under our practice." (*Id.* at p. 256.)

In *Kraner v. Halsey* (1889) 82 Cal. 209, the court similarly held that a complaint sufficiently stated a claim when it alleged "the payment of a sum of money by plaintiff at the special instance and request of defendant, for which money so paid defendant is indebted to him, and that he (defendant) has failed and refused to pay this money, or any part of it." (*Id.* at p. 210.) The court did not state or suggest that payment "at the special instance and request of defendant" was a necessary part of the claim.[9]

The traditional common count pleading language that these courts cited is not the only means to state or prove a common count claim. As Witkin explains, "[t]he typical form of a common count claim for work and labor or services uses the language 'at defendant's special instance and request.' Where the obligation is not founded on an express contract, the request is a basis for implying a promise to pay. *But it is not the only basis for an implied promise* and accordingly the omission of this language is not a fatal defect." (4 Witkin, Cal. Procedure (5th ed. 2020) Pleading, § 558, italics added.)

_____

[9] Fakheri also cites *Sanders v. Riviera Realty Co.* (1951) 104 Cal.App.2d 70, but that case holds only that a person can be the principal debtor on a loan even though the consideration "passed to a third party." (*Id.* at p. 75.) That principle has nothing to do with this case. Rubinstein sued Fakheri, who received the loan, not Yehuda, who arranged it.

16

Our Supreme Court's decision in *McFarland v. Holcomb* (1898) 123 Cal. 84 supports that conclusion. In that case, the court held that a complaint adequately stated a claim against an estate based on personal services (including nursing, boarding, lodging, counseling, and advising) provided to the decedent over a period of years. The court rejected the defendant's argument that the complaint failed to state a claim because it did not "aver that the services of the plaintiff were rendered at the request of their testator." (*Id.* at p. 86.) The court explained that "it is not requisite to aver either the consideration or the promise, when they are implied as a legal conclusion from the facts which are alleged. While counsel and advice are frequently given without any request, and may be of no benefit to the party to whom they are given, yet a complaint which shows that the plaintiff rendered services to the defendant which were received by him in person, and were presumptively at his request, and of which he has enjoyed the benefit, states facts from which the liability of the defendant therefore is presumed . . . . In the present case the nursing of the decedent by the plaintiff, and his acceptance from her of his board and lodging during the time specified, was a consideration sufficient to support the promise for compensation therefor which is implied in law, and to render him liable therefor." (*Ibid.*)

The same principle applies to a common count claim for money lent. An inflexible rule requiring proof of a specific request for a loan would be inconsistent with the broad equitable principles underlying a common count claim.

For the same reasons, we agree with the trial court that Rubinstein was not required to prove that Yehuda was acting as Fakheri's agent in requesting the loan from Rubinstein.

17

Rubinstein was not required to prove that Fakheri specifically requested the loan, either personally or through an agent.[10]  Nor was Rubinstein required to prove an express promise to repay the loan.  (See *Brown v. Spencer* (1912) 163 Cal. 589, 595 [evidence of a promise by the plaintiffs to repay a loan received for the purchase of property was not necessary, as the "loan of the money would itself raise an implied promise, binding on them in law, to repay it"].)  It was sufficient for Rubinstein to prove that Fakheri received the loan under circumstances showing an equitable obligation to repay it.  As discussed below, the evidence supports the trial court's finding that such circumstances existed in this case.

### b.    *The trial court's finding that Fakheri made an implied promise to repay the loan is supported by substantial evidence*

We review the trial court's factual findings for substantial evidence.  Under that standard, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence supporting the trial court's decision.  (*Avila, supra*, 46 Cal.4th at p. 701.)  Substantial evidence is evidence that is " 'reasonable, credible, and of solid value.' " (*Ibid.,* quoting *People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  We must presume in support of the judgment " 'the existence of every fact the trier could reasonably deduce from the evidence.' " (*Avila,* at p. 701, quoting *People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  Our task "*begins* and *ends* with the

---

[10] Nevertheless, as discussed below, the circumstances of Yehuda's request were relevant to show that Rubinstein understood the source and purpose of the money.

18

determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted," which will support the decision. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.)

The trial court found that Rubinstein paid the $874,708.44 to Fakheri as a loan. Ample evidence supports that finding. Rubinstein testified that Yehuda requested that Rubinstein loan the money to Fakheri, and Rubinstein agreed to do so. Rubinstein and Yehuda specifically discussed that the purpose of the loan was to renovate the Boris Property; that Fakheri would make the payments due on the loan from O'Hara; and that the entire principal amount of Rubinstein's loan would be repaid once the Boris Property was sold.

The evidence also supports the trial court's finding that Fakheri made an implied promise to repay the loan. As the trial court reasonably concluded, one may fairly infer an implied promise to repay a loan arranged by an intermediary if the recipient knows that he or she is receiving a loan and understands its terms.

There was sufficient evidence to conclude that Fakheri understood he had received a loan from Rubinstein (or his entities), despite Fakheri's testimony that he thought the money belonged to Yehuda.

First, the money did not come from Yehuda. It came by means of wire transfers from O'Hara and Wells and checks signed by Rubinstein.

Second, as discussed above, Rubinstein and Yehuda specifically discussed the terms of the loan. Under the deferential standard of review we apply to the evidence, we accept Rubinstein's testimony on this point. Yehuda told

Rubinstein that Rubinstein was loaning money to Fakheri; it is therefore reasonable to infer that Yehuda communicated the same information to Fakheri. As the trial court found, "Yehuda's arranging for a loan that would be repaid supports an implied promise by Fakheri to repay the loan."

Third, other evidence supports the conclusion that Fakheri understood he had received a loan from Rubinstein. Rubinstein was copied on communications concerning the Boris Property after Fakheri purchased it. Rubinstein's ongoing interest in the project would not have made sense if, as Fakheri testified, the money for the purchase of the property came from Yehuda. Fakheri also had no coherent explanation for the source of the $471,000 he received from the Wells account. Fakheri testified that the money was the repayment of a loan he had previously made to Yehuda. However, when impeached with his prior deposition testimony, he admitted that his prior loan to Yehuda was for only about $150,000. Finally, there was evidence that Fakheri and Yehuda had an ongoing personal and business relationship, supporting the conclusion that Yehuda had reason to inform Fakheri about the actual source of the money.

This evidence adequately supports the trial court's finding of an implied promise by Fakheri to repay the loan to Rubinstein under the equitable principles governing Rubinstein's common count claim.

### 4. Fakheri's Statute of Frauds Argument is Meritless

In his opening brief, Fakheri argues that the statute of frauds precludes any liability for the money he received from O'Hara because Lanark, not Fakheri, was the borrower on the loan from O'Hara. Fakheri relies on the statutory requirement

that a "special promise to answer for the debt, default, or miscarriage of another" must be in writing. (Civ. Code, § 1624, subd. (a)(2).)

In his opposition brief, Rubinstein correctly points out that the judgment the trial court awarded does not include any amount based upon interest that Fakheri allegedly promised to pay O'Hara on Lanark's loan.[11] Rather, the judgment awards only the principle amount that Fakheri owes directly to Rubinstein (either personally or by assignment from Lanark) because of the loan that Fakheri received. That obligation does not involve any promise to answer for the debt of another, and the statute of frauds therefore does not apply.

---

[11] Fakheri did not address the issue on reply.

## DISPOSITION

The judgment is affirmed.  Rubinstein is entitled to his costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.