In re ATLANTIC GULF
COMMUNITIES
CORP., Debtor.

Joseph William Gorka and Laura
Lee Larson, Plaintiffs,

v.

Michael B. Joseph, Chapter
7 Trustee, Defendant.

Bankruptcy No. 01–01594.
Adversary No. 04–55215.

United States Bankruptcy Court,
D. Delaware.

June 17, 2005.

John D. McLaughlin, Jr., Wilmington, DE, for the Trustee.

James C. Carignan, Pepper Hamilton LLP, Wilmington, DE, for the Plaintiffs.

## MEMORANDUM OPINION[1]

MARY F. WALRATH, Chief Judge.

This matter is before the Court on the motion for summary judgement filed by the Plaintiffs for a declaration that the estate has no interest in certain real property located in Port Charlotte, Florida, and, therefore, for an injunction prohibiting the chapter 7 Trustee from selling that property. For the reasons stated below, the Court will deny the motion for summary judgment and grant the Trustee's motion to sell the Debtor's interest in the real property, if any, by a quitclaim deed.

## I. BACKGROUND

In 1958, the predecessor to the Debtor, General Development Corporation ("GDC") purchased a large tract of land in Port Charlotte, Florida, bordering the Myakka River. The State of Florida deems the Myakka River to be a navigable waterway and claims title to all property below the river's mean high water line.

GDC subdivided the property and, in 1962, sold Lot 37 which overlooks the Myakka River to Darrel and Edith Duffey. The deed describes the property conveyed by metes and bounds pursuant to a plat map recorded in Charlotte County, Florida. Neither the deed nor the plat map specifically states that Lot 37 extends to the mean high water line of the Myakka River. Likewise, neither the deed nor the plat map states that GDC reserved title to any land between Lot 37 and the River or to any land that may accrete[2] to the Lot sold. Lots 35 and 36 were also sold and are now owned by Thomas J. and Karen L. Fero ("the Buyers").

At some point[3] land accreted from the Myakka River, creating an additional strip of land between Lot 37 (and Lots 35 and 36) and the Myakka River. As evidenced by an affidavit by the Charlotte County Appraiser's Office, Lot 37 is generally considered to be waterfront property and the owner of Lot 37 is taxed on the value of the accreted land. The Plaintiffs also assert that various improvements were made on the accreted land dating from 1973.[4] In 2002, Joseph William Gorka and Laurel Lee Larsen ("the Plaintiffs") purchased Lot 37.

On May 1, 2001, Atlantic Gulf Communities Corp. ("the Debtor") filed a voluntary petition under chapter 11; the case was subsequently converted to chapter 7 on June 18, 2002. The Debtor is the successor to GDC. Michael B. Joseph was ap-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. Accretion is defined as "[t]he gradual accumulation of land by natural forces, esp. as alluvium is added to land situated on the bank of a river or on the seashore." *Black's Law Dictionary,* 22 (8th ed.2004). *See also Board of Trustees of the Internal Improvement Trust*

*Fund v. Sand Key Assocs., Ltd.,* 512 So.2d 934, 936 (Fla.1987); *Mexico Beach Corp. v. St. Joe Paper Co.,* 97 So.2d 708, 710 (Fla.Dist.Ct.App. 1957).

3. There is no evidence when this occurred (before or after GDC conveyed the land).

4. The improvements included a seawall, pier and concrete walkway.

pointed the chapter 7 trustee ("the Trustee"). On June 21, 2004, the Trustee filed a motion for authority to sell the land which had accreted to Lots 35, 36, and 37 to the Buyers (who own Lots 35 and 36) for $9,000 free of all interests pursuant to section 363(f) of the Bankruptcy Code.

The Plaintiffs objected to the sale and filed the instant adversary proceeding seeking a declaration that the Trustee has no interest in the accreted land adjacent to Lots 36 and 37 ("the Disputed Property") [5] and, therefore, has no authority to sell it. On September 17, 2004, the Court entered an order authorizing the sale of the land that had accreted to Lot 35 and reserved ruling with respect to the Disputed Property.

The Plaintiffs filed a Motion for Summary Judgment in this adversary proceeding on January 31, 2005. The Trustee responded to the Motion on February 17, 2005.[6] The matter has been fully briefed and is ripe for decision.

## II. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), (N) & (O).

## III. DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

### B. *Declaratory Judgment*

The Plaintiffs argue that they are entitled to a declaration that they own the Disputed Property and that the Trustee has no interest in that property which he can convey to the Buyers. The Plaintiffs claim title to all the Disputed Property under Florida riparian law. *See, e.g., Burkart v. City of Fort Lauderdale*, 168 So.2d

---

**5.** The Plaintiffs assert that there is a dispute as to what part of the accretion relates to Lot 37 (owned by them) and what part relates to Lot 36 (owned by the Buyers).

**6.** In addition to responding to the Plaintiffs' motion, the Trustee filed a motion for judg-

ment on the pleadings. Because the Court considers matters outside the pleadings, the Court treats the Trustee's motion as one for summary judgment under Rule 56. Fed. R.Civ.P. 12(c).

65, 69 (Fla.1964) ("The plat, by placing the eastern boundary of the street contiguously along the water's edge, evinces an intent that the easement therein would continue to extend to the water's edge notwithstanding future accretion or erosion."); *Ford v. Turner,* 142 So.2d 335, 340 (Fla. Dist.Ct.App.1962) ("Generally the margin or bed of a stream, or other body of water constituting a boundary, continues which changes the location of the body to be the boundary notwithstanding any accretion or erosion of water. The boundary lines of land so located thus extends or restricts as that margin gradually changes or shifts by reason of accretion or erosion.").

In response, the Trustee argues that the Plaintiffs have no claim to the Disputed Property. He asserts that the Debtor's predecessor only sold the property described within the metes and bounds of the description of Lot 37 in the deed and plat map, which did not include the mean high-water line of the Myakka River as a boundary. Therefore, the Trustee does not concede that Lot 37 ever shared a boundary with the Myakka River or that the Disputed Property accreted to Lot 37. Further, the Trustee notes that there is no evidence when the Disputed Property accreted, before or after the sale of Lot 37 by GDC in 1959.

Therefore, the Trustee asserts that the Disputed Property continues to be owned by the estate. *See, e.g., Miller v. Bay–To–Gulf, Inc.,* 141 Fla. 452, 193 So. 425, 428 (1940) ("[B]oth instruments of conveyance in this case contained very exact, full, complete and definite descriptions of the premises. . . . The disputed strip of land was not included in either conveyance and the appellants have shown no right to claim any right, title or interest in or to the premises."); *Parish v. Spence,* 149 So.2d 58, 63 (Fla.Dist.Ct.App.1963) (stating that where a body of water is not the boundary to a property, the contiguous landowner was not entitled to the accreted land). Therefore, the Trustee asserts that the Debtor's estate does have an interest in the Disputed Property and may convey it pursuant to section 363(f)(4).

At a minimum, the Trustee argues that the Plaintiffs have not established that they own the Disputed Property. With respect to the accreted land to Lot 36, in particular, the Trustee notes that there is a dispute as to the proper survey of that accreted land. Therefore, the Plaintiffs have not established that they are the rightful owners of it; only that there is a dispute.

■ Since the matter is before the Court on a Motion for summary judgment, the Court may not decide it if there are genuine issues of material fact. In this case there are. It is material when the accretion arose because, if it arose before the conveyance by the Debtor's predecessor, then the conveyance which is in metes and bounds did not include it. Further, there is a factual dispute as to exactly what land accreted to what lot. Thus, the Court is unable to grant summary judgment for the Plaintiffs and cannot declare that the Plaintiffs own the Disputed Property.

### C. *Sale of Property under Section 363*

The Plaintiffs argue, therefore, that the Court cannot grant the Trustee's motion to sell the Disputed Property until it is determined that the Trustee owns that property. The Trustee disagrees.

■ Section 363(b) of the Bankruptcy Code allows a trustee to sell property of the estate outside the debtor's ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). Implicit within the statutory grant of authority to sell property under section 363, however, is the

requirement that the estate actually have an interest in the property to be sold. *Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir.2001) (noting that, before the trustee could sell estate property under section 363(b)(1), the estate was required to have an interest in that property); *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 863 (5th Cir.2000) (holding that trustee could not sell property owned by debtor's former spouse in which debtor had no interest).

Therefore, the Plaintiffs assert that the Court must determine whether the estate has any interest in the Disputed Property before allowing any sale of that property. The Trustee argues that he need not establish conclusively that the estate owns the Disputed Property because (1) he is not selling the Disputed Property but is only issuing a quitclaim deed which is essentially the right to assert an ownership interest in the Disputed Property and (2) section 363(f)(4) permits the estate to sell property which is subject to bona fide dispute.

### 1. *Property of the Estate*

■ Section 541(a) of the Bankruptcy Code defines property of the estate, to include, inter alia, all legal and equitable interests of the debtor. 11 U.S.C. § 541(a)(1). *See also, United States v. Whiting Pools*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (stating that " § 541(a)(1)'s scope is broad."). "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

### a. *Litigation rights*

■ Under Florida law, litigation rights (other than personal injury claims) are property interests that may be assigned. *Notarian v. Plantation AMC Jeep, Inc.*, 567 So.2d 1034, 1035 (Fla.Dist.Ct.App. 1990) (allowing the assignment of a statutory wrongful termination claim and stating that "the 'assignability of a cause of action is the rule rather than the exception . . . .' ") (citation omitted). *See also Forgione v. Dennis Pirtle Agency*, 701 So.2d 557, 559 (Fla.1997) ("Under Florida law, parties can assign causes of action derived from a contract or a statute."), *overruled in part, Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So.2d 755, 758 (Fla.2005) ("We therefore recede from the broad dicta in . . . *Forgione* purporting to prohibit the assignment of all legal malpractice claims. . . . Legal malpractice claims involving private placement memoranda may be assigned.").

■ Under bankruptcy law, even speculative litigation claims are property of the estate. *Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1279–80 (11th Cir. 2000) (holding that a legal malpractice claim arising from bankruptcy counsel's alleged negligence was property of the estate); *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 902 (7th Cir.2000) ("Legal claims are assets whether or not they are assignable, especially when they are claims for money . . . ."); *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir.1999) (stating that debtors have "an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*") (emphasis in original); *In re Jordan*, 63 F.2d 534, 535–36 (5th Cir.1933) (holding that the trustee was authorized to maintain a suit to quiet title to real property and remove clouds from the title); *In re Anderson*, 128 B.R. 850, 853 (Bankr.D.R.I. 1991) ("[C]ourts have held that Section 541 reaches all sorts of future, nonpossessory, contingent, speculative, and derivative interests.").

■ Since litigation rights are property of the estate, they may be sold under

section 363. 11 U.S.C. § 363(b). The sale of a litigation claim, however, does not entitle the assignee to collect in contravention of any defenses to that claim; all that is conveyed is the right to prosecute the action and collect any potential judgment. *See, e.g., Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 261 n. 11 (3d Cir.2000) (holding that affirmative defenses to cause of action are not claims extinguished by a section 363(f) sale in bankruptcy).

#### b. *Quitclaim deed*

■ The issuance of a quitclaim deed is similar to the assignment of a litigation claim. In assigning a litigation claim, the assignor does not guarantee the merits of the action. Similarly, by issuing a quitclaim deed, the grantor does not guarantee that it has any actual interest in the property conveyed. *Pierson v. Bill*, 133 Fla. 81, 182 So. 631, 635 (1938) ("One who accepts a quitclaim deed is ... conclusively presumed to have agreed to take the title subject to all risks as to defects or [e]ncumbrances.... The absence of express or implied covenants in a deed is equivalent to an express declaration therein that the grantor assumes to convey only his right or interest, whatever it may be, and that he declines to bind himself to do more."); *Miami Holding Corp. v. Matthews*, 311 So.2d 802, 803 (Fla.Dist.Ct. App.) ("It is well established that the execution of a quitclaim deed, without more, does not necessarily import that the grantor possesses any interest at all and if the grantor has no interest in the land described at the time of conveyance, the quitclaim conveys nothing to the grantee.").

■ Thus, there is no discernable difference between the assignment of a litigation right and the execution of a quitclaim deed under Florida law. Consequently, the Court concludes that the Trustee may convey whatever interest the estate may have in the Disputed Property by quitclaim deed.

Allowing the Trustee to sell whatever interest the estate has in the Disputed Property by quitclaim deed in this proceeding, and leaving any decision of who owns the Disputed Property to the Florida courts, is also consistent with the principles of voluntary abstention. 28 U.S.C. § 1334(c)(1). Once the estate's interest in the Disputed Property, if any, is sold by the Trustee, the Plaintiffs are free to adjudicate the merits of their claim in a local forum.

#### 2. *Effect of Section 363(f)(4)*

■ The Plaintiffs argue that allowing the Trustee to convey the Disputed Property under section 363(f), however, will adversely affect their rights. Section 363(f)(4) permits a trustee to sell property free and clear of liens and interests if such interest is in bona fide dispute.[7] Thus, the Plaintiffs argue that an order allowing the Trustee to convey the Disputed Property to the Buyers will eliminate any claim the Plaintiffs may have in that property.

That might be true if the Trustee were selling the Disputed Property by general warranty deed. He is not. As noted above, the issuance of a quitclaim deed does not convey anything more than what the grantor has.

■ Under Florida law, the issuance of a quitclaim deed suggests there is

---

**7.** A "bona fide dispute" is not specifically defined by the Bankruptcy Code, but the requirement is satisfied whenever there is some factual or legal dispute as to the validity of a claim. *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627 (8th Cir. BAP 2004) ("Clearly this standard does not require the court to resolve the underlying dispute, just to determine its existence.").

a dispute as to the true ownership of that property and carries the risk that the grantor has no interest in the real property. Similarly, under bankruptcy law, the Trustee cannot convey what the estate does not own. Therefore, the issuance of a quitclaim deed by the Trustee is consistent with both Florida law and bankruptcy law and will not adversely affect the right of the Plaintiffs to assert that they, in fact, own the Disputed Property and that the Trustee had no interest which he could convey to the Buyers.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Plaintiffs' motion for summary judgment, will overrule the Plaintiffs' objection to the Trustee's motion to sell the Disputed Property and will enter an order approving the sale to the Buyers by quitclaim deed.