Filed 7/13/23  Axis Entertainment v. Yari CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AXIS ENTERTAINMENT INC. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>BOB YARI et al.,<br><br>Defendants and Respondents. | B319669<br><br>(Los Angeles County Super. Ct. Nos. 21STCV19745, BC545365 |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed.

Krane & Smith, Marc Smith and Kathleen Dority Fuster for Plaintiffs and Appellants.

Nahai Law Group, Behzad Nahai and Jeffrey A. Lewiston; Levene, Neale, Bender, Yoo & Golubchik and Kurt Ramlo; Cochran, Davis & Associates and Lisa Kralik Hansen for Defendants and Respondents.

# INTRODUCTION

These appeals are the latest chapter in litigation dating back to 2010, when Axis Entertainment, Inc., Isaac Michalov, and Michael Grayson (collectively, Axis) obtained a $1 million judgment against Syndicate Films International, LLC (Syndicate). In 2014 Axis sued Syndicate officer Bob Yari, Yari Film Group, LLC, and various affiliated individuals and entities, alleging they improperly diverted Syndicate's assets to prevent Axis from enforcing the judgment. While that case was pending, Syndicate filed a bankruptcy petition, and Axis purchased from the bankruptcy trustee the estate's claims and causes of action against the defendants remaining in Axis's state court action (the Yari Parties).[1] Axis then filed this action, as successor in interest to Syndicate, against the Yari Parties and others.

Nine of the defendants in this action (the Yari Defendants)[2] demurred. The trial court sustained the demurrer without leave

---

[1] The Yari Parties are Bob Yari, Yari Film Group, LLC, Bob Yari Films, LLC, Bob Yari International, LLC, Dennis Brown, YFG Services, Inc., Persik Productions, Inc., and Stratus Film Company, LLC. Three of the Yari Parties (Yari Film Group, LLC, Bob Yari Films, LLC, and Bob Yari International, LLC) are not parties to this appeal.

[2] The Yari Defendants, the respondents in this appeal, are Bob Yari, Dennis Brown, YFG Services, Inc., Persik Productions, Inc., Stratus Film Company, LLC, Bob Yari Music, LLC, Schizophrenic Productions, LLC, BY Equities, LLC, and Davand Holdings, LLC. Five of the nine Yari Defendants are also Yari Parties, while the remaining four are not because they were not parties to Axis's 2014 state court action.

to amend on two grounds: (1) Axis, as the successor in interest to Syndicate, lacked capacity to sue because Syndicate was a suspended corporation and therefore could not bring a civil action; and (2) Axis lacked standing to sue those Yari Defendants who were not among the Yari Parties because Axis had not purchased claims against them. The court subsequently granted a motion by the Yari Defendants for attorneys' fees.

Axis appeals, arguing the trial court erred in ruling it lacked capacity to sue and in granting the Yari Defendants' motion for attorneys' fees. We affirm the judgment and order awarding attorneys' fees.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Axis Sues Syndicate and Recovers $1 Million*

Syndicate was a limited liability company formed in 2003 to conduct foreign sales for the Yari Film Group. In approximately 2006 Davand Holdings, LLC, which was wholly owned by Yari, became the sole member of Syndicate. In 2007 Axis sued Syndicate for $2.1 million in damages arising from, as one court described it, "'complex and intertwined loan transactions encompassing seven years.'" In 2010, after a jury trial, the court entered judgment in favor of Axis and against Syndicate for $1 million. Syndicate did not pay the judgment.

B. *Axis Sues Yari and Others*

In 2014 Axis filed an action against Yari, Yari Film Group, and other individuals and entities affiliated with Yari, asserting causes of action for fraudulent transfer, declaratory relief, unjust

3

enrichment, alter ego, and unfair competition.[3] Axis alleged the defendants commingled Syndicate's assets with theirs, undercapitalized Syndicate, and improperly diverted Syndicate's assets to prevent Axis from collecting on the $1 million judgment. In 2015 the Secretary of State and the Franchise Tax Board suspended Syndicate's corporate status.[4]

> C. *Syndicate Files a Bankruptcy Petition, and Axis Purchases Syndicate's Causes of Action Against the Yari Parties from the Trustee*

In 2019, while the 2014 action was pending, Syndicate filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. The filing of the bankruptcy petition stayed Axis's fraudulent transfer cause of action against the Yari Parties, as well as the other causes of action to the extent they

---

[3] The Yari Defendants' request for judicial notice of the complaint and the court's statement of decision in the 2014 action is granted.

[4] The Yari Defendants' request for judicial notice of a certificate of status issued by the Secretary of State on December 8, 2022, which states Syndicate's "powers, rights and privileges are suspended in California," is granted. (See Evid. Code, §§ 452, subd. (c), 459; *Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1483-1484.) The Yari parties' request for judicial notice of a printout from the website of the Secretary of State is denied. (See *Gomez v. Regents of University of California* (2021) 63 Cal.App.5th 386, 404, fn. 17; *Searles Valley Minerals Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, 519.) The parties do not dispute Syndicate's corporate status was suspended in 2015.

sought to avoid a transfer from Syndicate to the Yari Parties.  In 2020 the action in superior court proceeded to a court trial solely on Axis's alter ego theory of liability against the Yari Parties. The trial court ruled the Yari Parties were not the alter egos of Syndicate because Axis failed to make the required showing of unity of interest and ownership.  The court entered judgment in favor of the defendants.

Back in the bankruptcy court, the trustee filed a motion asking the court to approve a compromise that, subject to overbids at the hearing on the motion, would authorize the trustee to sell Yari "the bankruptcy estate's claims, causes of action, rights, interests and the State Court Action Causes of Action (whatever they may be without any warranties or representations of any type) against the [Yari] Parties."[5]  At the hearing Axis outbid Yari.  The bankruptcy court authorized the trustee to sell Axis the estate's claims against the Yari Parties for $25,000, and Axis withdrew its claim against the estate for over $1.9 million and waived any other claims it might have in the bankruptcy case.

---

[5]     It was a "compromise" because Yari, to settle the action, was trying to buy the claims against himself and the other defendants.  The compromise was "subject to overbids" because, although Yari agreed to pay $20,000, at the hearing on the motion, someone else could offer more, which Axis in fact did. The "State Court Action" referred to Axis's 2014 lawsuit, where the Yari Parties were the remaining defendants in that action.

D. *Axis Files This Action, and the Trial Court Sustains the Yari Defendants' Demurrer and Grants Their Motion for Attorneys' Fees*

After purchasing the claims from the bankruptcy trustee, Axis filed this action as Syndicate's successor in interest. Axis asserted causes of action against the Yari Parties and four other defendants (collectively, the Yari Defendants) for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, indemnity, unjust enrichment, an accounting, and declaratory relief. Axis alleged the defendants violated their fiduciary duties by siphoning away Syndicate's assets.

The Yari Defendants demurred. They argued (1) the statute of limitations barred Axis's causes of action; (2) Axis lacked standing to sue some of the defendants because Axis had not purchased claims against them; (3) Axis lacked capacity to sue as successor in interest to Syndicate because Syndicate, as a suspended corporation, could not prosecute a civil action; and (4) Axis's causes of action were uncertain. The trial court sustained the demurrer without leave to amend on the second and third grounds, ruling that Axis lacked standing to sue four of the defendants[6] and that Axis lacked capacity to bring any cause of action as Syndicate's successor in interest.

The Yari Defendants moved for attorneys' fees as the prevailing parties under attorneys' fees and indemnification provisions in Syndicate's operating agreement, and the court

---

[6] The trial court ruled Axis lacked standing to sue Bob Yari Music, LLC, Schizophrenic Productions, LLC, BY Equities, LLC, and Davand Holdings, LLC. Axis does not challenge this aspect of the trial court's ruling.

6

awarded them $58,810.76 in attorneys' fees. Axis timely appealed from the judgment and from the order granting the Yari Defendants' motion for attorneys' fees.[7]

## DISCUSSION

A. *The Trial Court Did Not Err in Sustaining the Yari Defendants' Demurrer Without Leave To Amend*

1. *Applicable Law and Standard of Review*

A demurrer tests the legal sufficiency of a complaint. (*City of Coronado v. San Diego Assn. of Governments* (2022) 80 Cal.App.5th 21, 35.) "In an appeal from a judgment following an order sustaining a demurrer without leave to amend, we first review de novo 'whether the complaint states facts sufficient to constitute a cause of action.'" (*Jane Doe No. 1 v. Uber Technologies, Inc.* (2022) 79 Cal.App.5th 410, 419; see *City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 472.)

---

[7] Axis appealed from the order sustaining the demurrer without leave to amend, which is not an appealable order. (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 883.) Because the trial court subsequently entered a judgment of dismissal, we treat Axis's premature appeal as an appeal from the subsequent judgment. (See *Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 96, fn. 1; *In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1262, fn. 4; *Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202.) An order granting a motion for attorneys' fees is appealable. (Code Civ. Proc., § 904.1, subd. (a)(2); *Riskin v. Downtown Los Angeles Property Owners Assn.* (2022) 76 Cal.App.5th 438, 444, fn. 5.) The judgment of dismissal includes the award of attorneys' fees.

"""""[W]e accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed."""" (*City of Coronado*, at p. 35; see *City of Oakland*, at p. 472.)

> 2. *As a Suspended Company, Syndicate Lacked Capacity To Sue*

Syndicate was suspended by the Franchise Tax Board and the Secretary of State in 2015 and remained suspended when it filed a bankruptcy petition in 2019. The Franchise Tax Board may suspend the corporate powers, rights, and privileges of a limited liability company if it fails to pay taxes or file a tax return. (Rev. & Tax. Code, §§ 23301, 23301.5, 23305.5.) The Secretary of State may suspend a limited liability company's powers, rights, and privileges if it fails to file the required statement of information. (Corp. Code, § 17713.10.)

A suspended company """"lacks the legal capacity to prosecute or defend a civil action during its suspension."""" (*Casiopea Bovet, LLC v. Chiang* (2017) 12 Cal.App.5th 656, 662 (*Casiopea Bovet*); see *Bourhis v. Lord* (2013) 56 Cal.4th 320, 324.) The purpose of the suspension "'is to "prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern" [citation], and to pressure it to pay its taxes.'" (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 310.) There is no dispute that, when Syndicate filed the bankruptcy petition, it lacked capacity to sue.[8]

---

[8] In *Reed v. Norman* (1957) 48 Cal.2d 338 the Supreme Court recognized an equitable exception to section 23301 in derivative actions where shareholders allege the mismanaging corporate officers controlled the records necessary to compute the franchise

### 3. *The Trustee Acquired Syndicate's Causes of Action Subject to the Incapacity Defense*

When an entity files a bankruptcy petition, the property of the entity becomes the property of the bankruptcy estate, and the trustee becomes the representative of the estate. (11 U.S.C. § 323;[9] *Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 506.) "The bankruptcy estate is comprised of property including: 'all legal or equitable interests of the debtor in property as of the commencement of the case' (§ 541(a)(1)) . . . . The scope of section 541 is broad; 'property' includes causes of action." (*Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1083; see *United States v. Whiting Pools, Inc.* (1983) 462 U.S. 198, 205, fn. 9 [103 S.Ct. 2309].)

The bankruptcy trustee has the capacity to sue on behalf of the estate. (§ 323; *Curtis v. Kellogg & Andelson*, *supra*, 73 Cal.App.4th at p. 506.) When asserting a debtor's causes of action, "a trustee 'stands in the shoes of the debtor' and is 'subject to the same defenses as could have been asserted against the debtor.'" (*In re Infinity Business Group, Inc.* (4th Cir. 2022) 31 F.4th 294, 301.) A bankruptcy trustee "'has standing to bring any suit that the debtor could have instituted' when the debtor filed for bankruptcy, and there is no suggestion in the text of the

---

tax owed and file a tax return. "In such a case it is not equitable to permit section 23301 of the Revenue & Taxation Code to stand as a shield for protecting allegedly dishonest corporate officials." (*Id.* at p. 343.) Axis does not argue this equitable exception applies here.

[9] Undesignated statutory references are to Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

Bankruptcy Code that the trustee acquires rights and interests *greater* than those of the debtor." (*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards* (11th Cir. 2006) 437 F.3d 1145, 1150.) According to the Congressional history, section 541(a)(1), was "not intended to expand the debtor's rights against others more than they exist at the commencement of the case. For example, if the debtor has a claim that is barred at the time of the commencement of the case by the statute of limitations, then the trustee would not be able to pursue that claim, because he too would be barred." (H.R. Rep. No. 95-595, 1st Sess., pp. 367-368 (1977), reprinted in 1978 U. S. Code Cong. & Admin News, pp. 5963, 6323; see *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 680 ["bankruptcy trustee stands in the shoes of the debtor and may not use his status as an innocent successor to insulate the debtor" from an unclean hands defense].) Thus, when the bankruptcy trustee stepped into Syndicate's shoes under section 541, it acquired whatever claims and causes of action Syndicate had against the Yari Parties, subject to the same incapacity (or other) defense the Yari Parties could have asserted against Syndicate.

The cases Axis cites to support its assertion "Syndicate's suspended status had no bearing on the claims the Trustee could have brought under the Bankruptcy Code" do not support that assertion. In *In re Feature Homes, Inc.* (Bankr. E.D.Cal. 1990) 116 B.R. 731 the bankruptcy court held the suspension of the debtor's corporate status under the California Revenue and Taxation Code did not deprive the debtor of standing to file for bankruptcy under the federal Bankruptcy Code. (*Id.* at p. 733.) In *In re Lopez* (Bankr. C.D.Cal. 2015) 532 B.R. 140 the court

stated a corporation's suspended status did not excuse the corporation's officer from turning over books and records, as required by the Bankruptcy Code. (*Id.* at p. 157.) Neither case addressed whether or how suspension of a debtor's corporate status affected the trustee's capacity to sue on behalf of the estate.

Axis also cites cases stating a bankruptcy trustee may sue a debtor's principals for breach of fiduciary duty (as Axis did in this action). This proposition is correct as a general proposition (see, e.g., *Koch Refining v. Farmers Union Cent. Exchange, Inc.* (7th Cir. 1987) 831 F.2d 1339, 1347 [corporation's causes of action against officers, directors, and shareholders for breach of fiduciary duty "become property of the estate which the trustee alone has the right to pursue after the filing of a bankruptcy petition"]), but it ignores the fundamental problem with Axis's case: The Yari Defendants could have asserted the defense of incapacity against all of the causes of action Axis brought on behalf of Syndicate. Axis cites no case where a bankruptcy trustee sued on behalf of a debtor that was a suspended company lacking capacity to sue.

4. *Axis Acquired Syndicate's Causes of Action Subject to the Incapacity Defense*

Rather than pursuing the bankruptcy estate's causes of action against the Yari Parties, the trustee decided to sell them, and Axis bought them.[10] A bankruptcy trustee may sell property

---

[10] As discussed, the bankruptcy trustee originally proposed to sell the causes of action to Yari as a compromise under Federal Rules of Bankruptcy Procedure, rule 9019(a) (11 U.S.C.). The bankruptcy court, however, authorized the trustee to sell the

11

of the estate, including causes of action, under section 363(b)(1). (See *In re Lahijani* (Bankr. 9th Cir. 2005) 325 B.R. 282, 287-288 ["Causes of action that exist independent of bankruptcy are commonly sold by bankruptcy trustees under § 363(b)."].)

Just as the bankruptcy trustee would have been subject to the lack of capacity defense based on Syndicate's suspension, so too was Axis. An assignee of a cause of action generally """"stands in the shoes' of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment."""" (*Cal-Western Business Services, Inc. v. Corning Capital Group*, *supra*, 221 Cal.App.4th at p. 311; see *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 806; Code Civ. Proc., § 368.) "In cases where the assignor of a chose in action is a suspended corporation, California courts generally have recognized that the assignee is subject to the same defenses that could have been asserted against the assignor." (*Cal-Western Business Services, Inc.*, at p. 311; see *Casiopea Bovet*, *supra*, 12 Cal.App.5th at p. 663 ["When an assignee acquires a claim from a corporation lacking capacity to sue under Revenue and Taxation Code section 23301, the assignee takes upon itself the same lack of capacity."].) The policy of encouraging companies to pay their taxes "is served by subjecting the assignee to the same incapacity defense as the assignor." (*Wanke, Industrial, Commercial, Residential, Inc. v. AV Builder Corp.* (2020) 45 Cal.App.5th 466, 477.) Otherwise, "a suspended corporation simply could sell its claim to a third party without ever having to cure the default that caused the suspension,"

---

causes of action to Axis, which submitted a higher bid, rather than Yari.

circumventing Revenue and Taxation Code section 23301's restriction and removing the statutory incentive to pay delinquent taxes. (*Cal-Western Business Services*, at p. 314.)

That the bankruptcy trustee assigned the causes of action to Axis under a bankruptcy court order does not change the result. "The sale of a litigation claim [under section 363] does not entitle the assignee to collect in contravention of any defenses to that claim; all that is conveyed is the right to prosecute the action and collect any potential judgment." (*In re Atlantic Gulf Communities Corp.* (Bankr. D.Del. 2005) 326 B.R. 294, 299-300.)

*Casiopea Bovet*, *supra*, 12 Cal.App.5th 656 is virtually on point. In that case the trial court entered an order under the Enforcement of Judgments Law (Code Civ. Proc., § 708.510) assigning a judgment creditor escheated funds held by the state on behalf of a judgment debtor, a suspended corporation. The state denied the creditor's claim for escheated funds because the debtor, as a suspended corporation, lacked capacity to claim the funds. (*Id.* at pp. 659-660.) The creditor argued it should not be subject to a lack of capacity defense because it obtained a judicial assignment rather than a voluntary assignment. (*Id.* at p. 662.) The court rejected that argument, holding that it made "no difference if the assignment is voluntary or through a judicial assignment" and that it would undermine the purpose of Revenue and Taxation Code section 23301 to "allow the suspended corporation to enjoy the ordinary privileges of an ongoing concern by resolving its debt without the risk of paying taxes." (*Casiopea Bovet*, at p. 664.)[11] As the trial court stated in sustaining the

---

[11] Axis does not contend the public policy analysis should be different when the suspended assignor has filed for bankruptcy.

13

Yari Defendants' demurrer, "the situation here is functionally identical" to the judicial assignment in *Casiopea Bovet*.

Axis complains the Yari Defendants were essentially arguing (and by implication the trial court ruled) the trustee sold Axis worthless claims "akin to shares in the Brooklyn Bridge." But Axis does not contend the trustee (or anyone else) misled Axis about the value of the causes of action or about Syndicate's suspension. Indeed, the bankruptcy court order approving the sale described the causes of action as "whatever they may be" and provided that the trustee disclaimed "any warranties or representations of any type," which put Axis on notice that the value of the causes of action was uncertain. (See *In re Atlantic Gulf Communities Corp.*, *supra*, 326 B.R. at p. 300 ["In assigning a litigation claim, the assignor [the bankruptcy trustee] does not guarantee the merits of the action."].) Axis does not dispute it could have ascertained Syndicate was suspended by consulting the Secretary of State's website. (See *Wanke, Industrial, Commercial, Residential, Inc. v. AV Builder Corp.*, *supra*, 45 Cal.App.5th at p. 477 ["Requiring an assignee to ensure at the time of assignment that its assignor is not a suspended corporation is not unduly burdensome."].) Any problems or defects in the claims Axis purchased were reflected in the purchase price.

> 5. *Axis Brought Causes of Action on Behalf of Syndicate, Not Its Creditors*

Perhaps realizing Syndicate's causes of action are barred by the incapacity defense, Axis argues it brought causes of action not as successor in interest to Syndicate, but "on behalf of all of the unsecured creditors as a whole." By not making this

14

argument in opposition to the demurrer, however, Axis forfeited it.  (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 474, fn. 15.)

Even if not forfeited, the argument is meritless.  Axis acquired the interests of the trustee, who had authority to sue on behalf of the estate, not Syndicate's creditors.  While "[i]t is true in a sense that a trustee in bankruptcy represents creditors of the bankrupt," the trustee "does so . . . only in a limited way" by "marshaling, preserving or otherwise administering the assets of the estate in bankruptcy."  (*Stodd v. Goldberger* (1977) 73 Cal.App.3d 827, 835.)  "A bankruptcy trustee has no standing to sue third parties on behalf of the estate's creditors, but may assert only claims held by the bankrupt entity."  (*Shaoxing County Huayue Import & Export v. Bhaumik* (2011) 191 Cal.App.4th 1189, 1197; accord, *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, *supra*, 133 Cal.App.4th at p. 677; *Smith v. Arthur Andersen LLP* (9th Cir. 2005) 421 F.3d 989, 1002; see *Stodd*, at p. 833 [bankruptcy trustee could not maintain an action on an alter ego theory absent some allegation of injury to the bankrupt corporation].)  The bankruptcy estate includes "any actions that a debtor corporation may have to recover damages for fiduciary misconduct, mismanagement or neglect of duty, and the bankruptcy trustee succeeds to that right for the benefit of all creditors of the estate."  (*Koch Refining v. Farmers Union Cent. Exchange, Inc.*, *supra*, 831 F.2d at p. 1347.)

Axis cites cases referring to the trustee as acting "on behalf of creditors."  Read in context, however, the statements in those cases make clear the trustee sued on behalf of the estate.  For example, in *In re Scott Acquisition Corp.* (Bankr. D.Del. 2006)

15

344 B.R. 283 the defendants moved to dismiss the complaint, arguing the trustee lacked standing to bring a breach of fiduciary duty claim on behalf of creditors. (*Id*. at p. 290.) The bankruptcy court denied the motion to dismiss, stating "the claims alleged in this case on behalf of the creditors are derivative of the corporation itself. . . . In this case, the plaintiff is not seeking recovery on behalf of an individual or even a class of creditors; rather, the plaintiff seeks recovery for the bankrupt corporation itself." (*Id*. at pp. 290-291.)

And it is clear from the first amended complaint that Axis sued on behalf of Syndicate, not its creditors. Axis alleged that, when it purchased the claims in the bankruptcy court, it became "Syndicate's successor-in-interest to any claims Syndicate may have" against the defendants. In its cause of action for breach of fiduciary duty, Axis alleged the defendants "owed Syndicate a fiduciary duty" and "breached those duties to Syndicate" by commingling assets, placing personal interests ahead of Syndicate's, and "failing to pursue claims and avenues of recovery available to Syndicate necessary to protect Syndicate from its creditors." Axis alleged that, as a result of those breaches of fiduciary duty, "Syndicate suffered harm."

Axis also argues it asserted claims the trustee could have brought under its avoiding powers, such as the trustee's ability to bring "fraudulent transfer and alter ego claims seeking to recover looted assets."[12] This argument is also meritless. The Bankruptcy Code gives the bankruptcy trustee the authority to

---

[12] Although courts disagree on the issue, the Ninth Circuit has held a trustee can transfer its avoidance powers. (See *In re P.R.T.C., Inc*. (9th Cir. 1999) 177 F.3d 774, 782).

16

bring an action to avoid (i.e., reverse) certain transactions for the benefit of the estate and its creditors. (See §§ 544, 547, 548.) The trustee "is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property." (*Commodity Futures Trading Com. v. Weintraub* (1985) 471 U.S. 343, 352 [105 S.Ct. 1986].) Under its avoiding powers, the trustee can set aside certain transfers or obligations incurred by the debtor that an unsecured creditor could have avoided by allowing "the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors . . . ." (*In re Pacific Gas & Electric Co.* (Bankr. N.D.Cal. 2002) 281 B.R. 1, 14; see § 544(a), (b).) The trustee also has the authority to set aside any fraudulent transfer the debtor made within two years before filing a bankruptcy petition. (§ 548(a)(1).)

A trustee seeking to use the avoiding powers to set aside a transfer or an obligation, however, must file an adversary proceeding in bankruptcy court. (See *In re Colortran, Inc.* (Bankr. 9th Cir. 1997) 218 B.R. 507, 510; *In re Commercial Western Finance Corp.* (9th Cir. 1985) 761 F.2d 1329, 1338; Fed. Rules Bankr. Proc., rule 7001(1), (2), 11 U.S.C.) The bankruptcy trustee cannot file a state court action to avoid a transfer. Nor, as the purchaser of the trustee's claims, could Axis.

Thus, Axis's causes of action were barred by the lack-of-capacity defense. The trial court did not err in sustaining the demurrer without leave to amend.[13]

---

[13]   Axis does not argue the trial court abused its discretion in sustaining the demurrer without leave to amend.

B.   *Axis Has Not Shown the Trial Court Erred in*
     *Awarding Fees Under the Attorneys' Fees Provision*

Axis argues the trial court erred in awarding the Yari Defendants their attorneys' fees under two provisions in Syndicate's operating agreement: an attorneys' fees provision and an indemnification provision.  We conclude Axis has not shown the trial court erred in awarding fees under the attorneys' fees provision.

1.   *Applicable Law and Standard of Review*

"Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees."  (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)  Section 1021 of the Code of Civil Procedure codifies this general rule, but also allows parties "to contract" out of it.  (*Mountain Air Enterprises,* at p. 751; see *R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1025.)  Parties ""'may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.""'  (*Mountain Air Enterprises*, at p. 751; see *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 989.)

""'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion.  However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to

18

statutory construction and a question of law.'" [Citation.]  In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.'" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC*, *supra*, 3 Cal.5th at p. 751; see *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 425 ["'[o]n appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law'"]; *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 237 [same].)  In determining "'whether the parties entered an agreement for the payment of attorney fees, and, if so, the scope of the attorney fee agreement,'" we "apply traditional rules of contract interpretation." (*Mountain Air Enterprises*, at p. 752.)

### 2.     *The Attorneys' Fees Provision Authorized the Award of Attorneys' Fees*

The trial court awarded the Yari Defendants attorneys' fees as prevailing parties under Section 11.10 of Syndicate's operating agreement.  Section 11.10, titled "Attorneys' Fees," states:  "If any *dispute between the Company and the Members* or among the Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing party, including, without limitation, reasonable attorney's fees and expenses whether or not actually incurred." (Italics added.)  As a member of Syndicate, Davand Holdings, LLC, was entitled to recover its attorneys' fees under

19

Section 11.10 because it prevailed in litigation with Axis, which sued as successor in interest to Syndicate, the Company.[14]

Axis argues the provisions of the operating agreement "are simply irrelevant" because Axis sued "to protect the rights of creditors," not for "breach of the Operating Agreement." As discussed, Axis's contention it sued on behalf of Syndicate's creditors is meritless; Axis sued as Syndicate's successor in interest after purchasing the estate's causes of action from the trustee. The attorneys' fees provision is broad, covering "any dispute between the Company and the Members." That's what this is: a dispute between the company (Syndicate) and one of its members (Davand Holdings, LLC). And because the provision covers not only an action on the contract, but "any dispute" between the parties, it authorizes an award of attorneys' fees in this case. (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 ["[i]f a contractual attorney fee provision is phrased broadly enough . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims"]; *Maynard v. BTI Group, Inc.*, *supra*, 216 Cal.App.4th at p. 993 ["an attorney fee provision awarding fees based on the outcome of 'any dispute' encompasses all claims, whether in contract, tort or otherwise"].)

Finally, the nine Yari Defendants filed a joint motion for attorneys' fees, and the trial court granted it, awarding fees to all of them. Although Davand Holdings is the only defendant who was a member of Syndicate, the Yari Defendants argued they

---

[14] Axis does not argue that, as a nonsignatory to the operating agreement, it was not bound by the agreement's attorneys' fees provision. Syndicate, Axis's predecessor in interest, was a signatory.

20

were all entitled to fees under the attorneys' fees provision because Axis alleged the defendants were all alter egos of Davand Holdings. Although Axis argued in the trial court that Davand Holdings was the only defendant who was a member of Syndicate and a party to the operating agreement, it has abandoned that argument on appeal. Axis does not argue that, even if the trial court properly awarded attorneys' fees to Davand Holding, the court erred in awarding fees to the other eight defendants. Because the trial court awarded attorneys' fees to all nine Yari defendants, including Yari, we do not reach Axis's argument Yari was not entitled to attorneys' fees under the indemnity provision. Although the trial court discussed that provision in its ruling, we review the trial court's order, not the court's reasoning. (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 625; see *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 ["'[i]t is axiomatic that we review the trial court's rulings and not its reasoning'"].)

## DISPOSITION

The judgment is affirmed.  The order awarding the Yari Defendants their attorneys' fees is affirmed.  The Yari Defendants are to recover their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

ESCALANTE, J.*

---

*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.