Filed 12/21/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SAN JOSE SHARKS, LLC, et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA CLARA COUNTY, <br><br> Respondent; <br><br> FACTORY MUTUAL INSURANCE COMPANY, <br><br> Real Party in Interest. | H050441 <br> (Santa Clara County <br> Super. Ct. No. 21CV383780) |

The parties to the underlying action dispute whether losses plaintiffs[1] incurred as a consequence of the COVID-19 pandemic are covered by a commercial insurance policy issued by defendant Factory Mutual Insurance Company. Plaintiffs' petition for writ review of a trial court order striking the majority of their coverage theories calls for us to

---

[1] Plaintiffs are the National Hockey League; NHL Enterprises L.P.; NHL Enterprises Canada, L.P.; NHL Enterprises B.V.; San Jose Sharks LLC; Sharks Sports & Entertainment LLC; Anaheim Ducks Hockey Club, LLC; IceArizona Holdings LLC; Hockey Western New York, LLC; DCP HH LLC; Dallas Sports & Entertainment, L.P.; Sunrise Sports & Entertainment LLC; Minnesota Hockey Ventures Group, LP; Club de Hockey Canadien, Inc.; Predators Holdings LLC; Devils Holdco LP; NY Hockey Holdings LLC; Capital Sports Holdings Inc.; Team Lemieux LLC; SLB Acquisition LLC; Maple Leaf Sports & Entertainment LTD.; Aquilini Investment Group Limited Partnership; Black Knight Sports and Entertainment LLC; Megill-Stephenson Company Limited; and Osmington Inc.

assess whether plaintiffs adequately pleaded "covered physical loss or damage to property due to COVID-19" and to interpret the terms of the operative insurance agreements.

We conclude that the policies' contamination exclusion, which the trial court did not reach, unambiguously operates to exclude viral contamination such that the trial court's ultimate determination that plaintiffs cannot allege *covered* physical loss or damage to property is correct. Accordingly, we deny plaintiffs' petition.

## I.    BACKGROUND

### A.    *Plaintiffs' Allegations in the Operative Second Amended Complaint[2]*

Factory Mutual insured various of plaintiffs' properties, including hockey arenas, "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE" except as excluded. The "all risks" policies cover "TIME ELEMENT loss"—business interruption losses "directly resulting from physical loss or damage of the type insured" subject to certain conditions, including either gross earnings or gross profits and "expenses reasonably and necessarily incurred . . . to reduce the loss otherwise payable" under the time element coverage.

The policies contain "additional time element coverage extensions" for "interruption by communicable disease," which, subject to exclusions, are triggered when "a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by [¶] (1)] an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or [¶] [(2)] a decision of an Officer of the

---

[2] In an amicus brief, the California Medical Association cautions against our perpetuating "dangerous misinformation" about the virus. To be clear, in a challenge to a complaint for failure to state a claim we are obliged to treat as true " ' " ' "all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768 (*Mathews*); see also *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We take no position as to the merits of plaintiffs' factual allegations.

Insured as a result of the actual not suspected presence of communicable disease." (Capitalization & boldface omitted.)  The interruption by communicable disease coverage extension "covers the Actual Loss Sustained and EXTRA EXPENSE incurred . . . during the PERIOD OF LIABILITY at such location with the actual not suspected presence of communicable disease."  (Boldface omitted.)

Further, the policies contain time element coverage extensions for "civil or military authority."  The civil authority extensions cover "the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil . . . authority limits, restricts or prohibits partial or total access to an insured location provided such order is the direct result of physical damage of the type insured at the insured location or within five statute miles/eight kilometres of it."  (Boldface omitted.)

Unless "directly resulting from other physical damage not excluded," the policies exclude "contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded . . . , then only physical damage caused by such contamination may be insured," although the policies include additional coverage for specified decontamination costs.  (Boldface omitted.)  Contamination is defined as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew."

COVID-19 is a potentially deadly communicable disease caused by a coronavirus. Throughout 2020, the virus was presumed to be present or imminently present everywhere.  As of March 22, 2022, there had been over 83 million cases of COVID-19 in the United States and Canada and over 6.1 million deaths worldwide.  Many of these

3

illnesses were caused when people were exposed to "air and surfaces[ ]that had been physically . . . altered by the COVID-19 virus."

People infected with COVID-19 expel the virus when they exhale. Viral droplets may remain suspended in the air or adhere to surfaces. Viral droplets are also transferred to surfaces when an infected individual touches a surface after touching their eyes or nose. Plaintiffs further allege that the virus "changes the chemical composition of air . . . amount[ing] to physical damage" and "alter[s] the molecular structure of . . . otherwise inert property": "The COVID-19 virus damages property . . . by adhering to and altering the structure of its surfaces. Specifically, . . . it has been reported that the virus changes the surfaces of that property as its spike proteins become entangled with, bound to, and part of the molecular surface of the materials with which it comes into contact. When that happens, the surfaces change in scientifically measurable and quantifiable ways. Moreover, as studies have shown, these materials then become infectious when touched and unfit for use." "[B]ecause the virus renders otherwise inert materials dangerous, viral contact with property, and the air within the property, means significant damage and loss."

The virus was present in each of plaintiffs' insured locations. As a result, the virus "physically damage[d]" plaintiffs' insured property by "chang[ing] the chemical composition of air" and "altering the molecular structure of the physical surfaces of otherwise inert property."

In March 2020, plaintiffs closed their hockey arenas prior to the issuance of any relevant government orders because "of the presence of the COVID-19 virus at insured arenas, and the resulting physical damage to the arenas," including the "air and surfaces" of those properties, and because of "the external peril of [the virus]." During certain other time periods, government orders required either the closure of hockey arenas or limited fan access to games. Plaintiffs lost earnings as a result of canceled hockey games and limited fan access to games. Further, plaintiffs incurred losses to repair their

4

property and mitigate the virus's harmful physical effects—disinfecting areas and equipment infected individuals used, cleaning and sanitizing high-touch surfaces, developing COVID-19 and Mechanical/HVAC-R policies, and making various physical modifications to arenas. Fans were only allowed to attend games after plaintiffs had undertaken various remedial measures to mitigate the virus's physical impact on surfaces and the air, government restrictions and orders were relaxed, and COVID-19 vaccines became more prevalent. If plaintiffs had allowed fans to attend games while COVID-19 rates were high during 2020, their properties would have suffered more damage from the virus.

Plaintiffs paid the required premiums on their insurance policies, provided a timely notice of claim for their virus-related losses, and submitted a proof of loss. Plaintiffs allege that their insurance policies cover COVID-19-related losses for property damage and restoration costs, business interruption losses and extra expenses, civil authority losses, losses due to the physical prevention of ingress of egress to insured locations, communicable disease losses, and losses incurred to mitigate property damage. Factory Mutual denied plaintiffs' claims. Plaintiffs filed suit, alleging three causes of action: (1) breach of contract; (2) declaratory relief; and (3) breach of the implied covenant of good faith and fair dealing.

**B.**   ***Procedural History***

Factory Mutual demurred to the operative complaint. In the alternative, Factory Mutual moved to strike allegations "concerning provisions of the Policies other than the coverages for Communicable Disease Response and for Interruption by Communicable Disease, which do not require physical loss or damage to the property."

The trial court overruled Factory Mutual's demurrer because plaintiffs had at a minimum stated a claim for relief based on communicable disease coverage. But the trial court granted the motion to strike "in large part," concluding that plaintiffs failed "to allege covered physical loss or damage to property due to COVID-19." The trial court

5

declined to address Factory Mutual's contention that the contamination exclusion barred plaintiffs' claims for coverage.

By petition for writ of mandate, plaintiffs challenge the trial court's ruling on the motion to strike. We issued an order to show cause in which we asked the parties to address whether the trial court's analysis was appropriately deferential to plaintiffs' factual allegations.

## II.    DISCUSSION

Interpreting the parties' insurance policy in the context of plaintiffs' factual allegations, we read the contamination exclusion as excluding from coverage both the physical loss or damage caused by viral contamination and the associated time element loss. Accordingly, although we consider plaintiffs to have adequately alleged physical loss or damage from the coronavirus, we deny writ relief. (Cf. *Atwell Island Water Dist. v. Atwell Island Water Dist.* (2020) 45 Cal.App.5th 624, 627, 634-635 (*Atwell*).)

### A.    *Standard of Review*

A defective portion of a cause of action is subject to a motion to strike. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393-394 [discussion of "conventional" motions to strike], citing *PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682; see also Code Civ. Proc., §§ 435, subd. (b), 436, subd. (b).) "The grounds for a motion to strike shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice." (Code Civ. Proc., § 437, subd. (a).) "We 'read allegations of a pleading subject to a motion to strike as a whole, all their parts in their context, and assume their truth.' " (*Atwell*, *supra*, 45 Cal.App.5th at p. 628; see also *Marina Pacific Hotel and Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 104-105 (*Marina Pacific*) [in demurrer context, " 'we accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations' "]; *Mathews*, *supra*, 8 Cal.5th at p. 768.)

6

"The trial court's ruling on a motion to strike a pleading . . . is generally reviewed for abuse of discretion." (*Cal-Western Business Servs., Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309 (*Cal-Western*); see also *Abbott Laboratories v. Superior Court* (2020) 9 Cal.5th 642, 651 (*Abbott*) [reviewing denial of motion to strike for abuse of discretion].) Under that otherwise deferential standard, we review questions of law de novo. (See *Cal-Western*, *supra*, 221 Cal.App.4th at p. 309; *Abbott*, *supra*, 9 Cal.5th at p. 651.)

**B.     *Interpretation of Insurance Contracts***

The judicial interpretation of an insurance contract presents a question of law. (*John's Grill, Inc. v. The Hartford Financial Services Group, Inc.* (2022) 86 Cal.App.5th 1195, 1206, review granted Mar. 29, 2023, S278481 (*John's Grill*).) " ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contract interpretation apply." [Citation.] Thus, "the mutual intention of the parties at the time the contract is formed governs interpretation." [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language is "clear and explicit, it governs." ' . . . 'If the terms are ambiguous [i.e., susceptible to more than one reasonable interpretation], we interpret them to protect " 'the objectively reasonable expectations of the insured.' " [Citations.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities must be resolved against the insurer.' " (*Yahoo Inc. v. National Union Fire Ins. Co.* (2022) 14 Cal.5th 58, 67.)

"Insurance policies typically contain two main components: . . . provisions that specify the risks being covered and . . . exclusionary provisions that 'remove coverage for certain risks which are initially within the insuring clause.' [Citation.] The grant of coverage is generally interpreted broadly in favor of the insured to protect the objectively reasonable expectations of the insured. [Citations.] And exclusionary provisions that limit or take away coverage are 'strictly construed against the insurer and liberally

7

interpreted in favor of the insured' [citation], while exceptions to exclusions are broadly construed in favor of the insured [citation]." (*John's Grill*, *supra*, 86 Cal.App.5th at p. 1207, review granted.)

**C.      *Allegations of Physical Loss or Damage Caused by the Virus***

**1.      *Physical Loss or Damage***

Relying on *United Talent Agency v. Vigilant Insurance Company* (2022) 77 Cal.App.5th 821 (*United Talent*), the trial court ruled that the virus's presence "in the air and on surfaces is not physical loss or damage to property." The trial court recognized that a second decision, *Marina Pacific*, disagreed with *United Talent*, but found *United Talent* persuasive. (See *Another Planet Entertainment, LLC v. Vigilant Ins. Co.* (9th Cir. 2022) 56 F.4th 730, 734, request for certification granted Mar. 1, 2023, S277893 [explaining split between *United Talent* and *Marina Pacific* in certifying question to California Supreme Court].) Assuming the truth of plaintiffs' factual allegations regarding the interaction between the virus and the physical surfaces of the insured property, we are persuaded that plaintiffs have alleged physical loss or damage within the meaning of the policies.

In *United Talent*, the plaintiff alleged that the virus damaged the air and surfaces of its insured property. (*United Talent*, *supra*, 77 Cal.App.5th at pp. 826-827.) The court noted that "[m]any courts have rejected the theory that the presence of the virus constitutes physical loss or damage to property." (*Id*. at p. 835.) Acknowledging that "there are 'some comparable elements between' allegations that the virus physically altered property and cases in which 'a physical force rendered real property uninhabitable or unsuitable for its intended use, without any structural alteration,' because 'the COVID-19 virus—like smoke, ammonia, odor, or asbestos—is a physical force[,]' " the court stated "that courts have rejected claims that 'short lived' contamination that can be addressed by simple cleaning constitutes direct physical loss." (*Ibid*.) The court held "that the presence or potential presence of the virus does not constitute direct physical

8

damage or loss. While the contamination of asbestos . . . or environmental contaminants . . . constituted property damage in that they rendered a property unfit for a certain use or required specialized remediation, the comparison to a ubiquitous virus transmissible among people and untethered to any property is not apt. . . . [T]he virus exists worldwide wherever infected people are present, it can be cleaned from surfaces through general disinfection measures, and transmission may be reduced or rendered less harmful through practices unrelated to the property, such as social distancing, vaccination, and the use of masks. Thus, the presence of the virus does not render a property useless or uninhabitable, even though it may affect how people interact with and within a particular space." (*Id*. at p. 838; see also, e.g., *Endeavor Operating Co., LLC v. HDI Global Ins. Co.* (2023) 96 Cal.App.5th 420, 440-442, review granted Dec. 13, 2023, S282533; *Tapestry, Inc. v. Factory Mutual Ins. Co.* (2022) 482 Md. 223, 250-251 (*Tapestry*); *Schleicher and Stebbins Hotel, LLC v. Starr Surplus Lines Ins. Co.* (2023) 175 N.H. 744, 747; *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.* (10th Cir. 2023) 85 F.4th 1034, 1042-1044 (*Monarch Casino*); *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.* (7th Cir. 2022) 44 F.4th 1014, 1022.)

In *Marina Pacific*, the plaintiffs alleged that the virus bonded with surfaces to physically damage property. (*Marina Pacific*, *supra*, 81 Cal.App.5th at p. 101.) The court acknowledged cases requiring allegations that "an external force acted on the insured property causing a physical change in the condition of the property to come within the coverage provision for 'direct physical loss or damage.' " (*Id*. at p. 107.) The court held that the plaintiff's allegations were sufficient. (*Id*. at p. 108.) Assuming the truth of the plaintiffs' allegations, the plaintiffs had "unquestionably pleaded direct physical loss or damage to covered property" and "adequately alleged that physical loss or damage caused a slowdown in, or cessation of, the operation of the insureds' business." (*Id*. at p. 109.) The court underscored that the policy contained "communicable disease coverage" that "explicitly contemplates that a communicable

9

disease, such as a virus, can cause damage or destruction of property and that such damage constitutes direct physical loss or damage as defined in the policy." (*Id.* at p. 112.) The court declined to follow *United Talent*, reasoning that the *United Talent* court "found—without evidence—the COVID-19 virus does not damage property. . . . We are not authorized to disregard those allegations when evaluating a demurrer, as the court did in *United Talent*, based on a general belief that surface cleaning may be the only remediation necessary to restore contaminated property to its original, safe-for-use condition." (*Id.* at p. 111; see also *Shusha, Inc. v. Century-National Ins. Co.* (2022) 87 Cal.App.5th 250, 260, fn. 5, 265-266, review granted Apr. 19, 2023, S278614 (*Shusha*) [following *Marina Pacific* in the absence of a communicable disease provision]; *Tarrar Enters., Inc. v. Associated Indemnity Corp.* (2022) 83 Cal.App.5th 685, 687-689 [in the wake of *Marina Pacific*, holding that trial court erred in denying leave to amend to insured]; *Huntington Ingalls Indus., Inc. v. Ace American Ins. Co.* (Vt. 2022) 287 A.3d 515, 535-536.)

Here, there is presently no dispute that " 'physical loss or damage' requires a 'distinct, demonstrable, physical alteration of the property,' " more than " 'mere loss of use of physical property to generate business income, without any other physical impact on the property . . . .' " At that level of generality, plaintiffs' allegations pass muster. At minimum, plaintiffs alleged droplets bearing the virus demonstrably and measurably contaminated the surfaces of the insured properties. To the extent plaintiffs further alleged that the virus altered their property's molecular structure, Factory Mutual does not contest that we must assume the truth of that allegation. (See *Marina Pacific*, *supra*, 81 Cal.App.5th at p. 108 [crediting allegations to the effect that the virus "bonds to surfaces through physicochemical reactions involving cells and surface proteins, which transform the physical condition of the property"].)

Factory Mutual contends that even if the virus were to alter the surface molecular structure of insured property so as to render the property unsafe, that alteration does not

10

constitute physical loss or damage. In Factory Mutual's reasoning: (1) the ordinary and popular usage of "physical loss or damage" does not include "activity at the molecular level that is imperceptible to any of the [unaided] human senses [even if] 'scientifically measurable[;]' " (2) the communicable disease coverage extension is triggered without a showing of physical loss or damage, indicating an understanding that communicable diseases do not cause physical loss or damage; and (3) cases concerning other noxious substances have required that the substance make the property "physically uninhabitable." Our understanding of the policy before us does not require plaintiffs to clear the hurdles Factory Mutual would have us raise.[3]

Coverage extends to "*all* risks of physical loss or damage" not expressly excluded. (Italics added.) The parties agreed to an exclusion for "contamination" caused by a virus, unless the contamination directly results from "*other* physical damage" that is not excluded.[4] (Italics added.) If the parties did not contemplate that viral contamination could constitute a form of physical loss or damage, there would have been no need to specify that contamination resulting from "other" (covered) physical damage was not excluded from coverage. Moreover, given this exclusion it is unsurprising that the communicable disease coverage extension does not require physical loss or damage as a trigger. (See *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 759 ["an insurer is not absolutely prohibited from drafting and enforcing policy provisions that provide or leave intact coverage for some, but not all, manifestations of a particular peril"]; *Monarch Casino*, *supra*, 85 F.4th at p. 1041 [contamination exclusion from all-

---

[3] We do not reach plaintiffs' contention that the policies insure physical damage to air within their properties. (See *Tapestry*, *supra*, 482 Md. at pp. 249-250, fn. omitted ["We are not aware of any reported decisions that have treated damage to air itself, as opposed to loss or damage to property resulting from air contamination, as property damage"].)

[4] There is a similar exclusion applicable to "changes in color, flavor, texture or finish."

11

risk and business-interruption coverage not inconsistent with additional (limited) communicable disease coverage]; *Out West Restaurant Group, Inc. v. Affiliated FM Ins. Co.* (9th Cir. Sept. 2, 2022, No. 21-15585) 2022 WL 4007998, at p. *2 (*Out West*) [no conflict between contamination exclusion and communicable disease coverage]; see also *Marina Pacific*, *supra*, 81 Cal.App.5th at p. 112 [assessing whether policy contemplated that a communicable disease could cause physical loss or damage].)

Factory Mutual contends that if plaintiffs may plead a claim for physical loss or damage that is not perceptible by the unaided human senses, plaintiffs may be permitted to state a claim "without pleading any facts specific to a location or property item." This contention mixes two distinct issues: the means by which the physical loss or damage is ascertained is distinct from the specificity with which plaintiffs must identify the damaged property in their pleadings.

Here, plaintiffs allege that their insured property was damaged by a viral contaminant. Further, plaintiffs allege that they discarded and replaced items as part of their reopening process.[5] Nothing in the policies suggests that the term "all risks of physical loss or damage" excludes risks that, while altering property in a distinct, demonstrable, and physical way, damage property in a way that is imperceptible to the unaided human senses. Nor do the policies suggest that physical loss or damage is covered only when the property is rendered "physically uninhabitable," as opposed to

---

[5] Factory Mutual argues that plaintiffs did not allege that such items were damaged by the virus, leaving open the possibility that plaintiffs merely discarded undamaged property in making general improvements. We acknowledge that the ambiguity as to what property was discarded or replaced and why, but we note that plaintiffs also alleged costs to sanitize contaminated surfaces, such as the purchase of electrostatic sprayers. (Cf. *Oregon Clinic, PC v. Fireman's Fund Ins. Co.* (9th Cir. 2023) 75 F.4th 1064, 1073, fn. omitted [disregarding allegations that "COVID-19 was present and caused physical damage in numerous ways" as "conclusory" where the plaintiff "merely alleged . . . physical damage without explaining *how* COVID-19 caused such damage or *whether* replacement of physically lost or damaged property was necessary"].)

12

rendered unsuitable for its intended purpose. (See generally *Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 701-704 (*Inns*) [distinguishing cases where noxious substances rendered property unsuitable for its intended purpose where analysis turned on whether it was the presence of the virus on the premises or government orders caused unsuitability].)

### 2. *Causation*

Factory Mutual contends that even if the virus physically damaged insured property, plaintiffs' business interruption losses resulted not from that physical damage, but from the risks posed by people assembling in the same space. As alleged, plaintiffs' core business is "staging hockey games with world[-]class athletes in front of a live audience." The thrust of Factory Mutual's argument is that—regardless of the condition of plaintiffs' insured property—those games could not have gone forward, because the virus rendered attendance at indoor hockey games inherently unsafe. (See *Inns*, *supra*, 71 Cal.App.5th at pp. 713-714 [demurrer properly sustained where business interruption was caused by government orders rather than physical damage to property]; *Best Rest Motel, Inc. v. Sequoia Ins. Co.* (2023) 88 Cal.App.5th 698, 709 [even if hotel was uninhabitable due to presence of COVID-19 fomites, summary judgment was properly granted because there was "no evidence creating a triable issue that fomites—as distinguished from massive reductions in tourism—caused" the plaintiff's lost income].) But Factory Mutual's line of argument would require us to reject at the pleading stage facts that plaintiffs adequately alleged in their complaint.

Plaintiffs alleged that contaminated surfaces spread the virus. Plaintiffs alleged that they closed hockey arenas during the season as a result of the presence and associated physical damage the virus had caused in their facilities.[6] The relative risk

---

[6] Plaintiffs' causation allegations are in the context of a complaint treating the virus's presence in the air and on surfaces as physical loss or damage. Above, we have addressed only the virus's presence on surfaces. However, nothing in the operative

13

posed by surface-to-person transmission, the virus's actual presence in insured properties, and plaintiffs' precise reasons for closing their arenas—as between extant contamination within the insured properties and the risk inherent in staging hockey games during the COVID-19 pandemic—are factual disputes beyond the scope of the present pleading challenge. (See *Shusha*, *supra*, 87 Cal.App.5th at p. 266, review granted.)

**D.** *Contamination Exclusion*

Because plaintiffs alleged that it was a virus that caused the disputed physical damage to their property, their allegations implicate the policies' contamination exclusion. Plaintiffs concede that the exclusion precludes recovery for the diminution of property value as a result of contamination and costs due to the contamination, but they contend that it does not exclude claims for lost earnings. Factory Mutual contends that the exclusion encompasses any losses from viral contamination including business interruption otherwise covered under the policy's "Time Element" provision. Reading the policy as a whole, we conclude that the policy is not reasonably susceptible to plaintiffs' interpretation. Rather, the policy unambiguously excludes physical loss or damage in the form of viral contamination from the scope of coverage.[7]

Although, as we have recognized, the policies cover "all risks of physical loss or damage" except as excluded, the policies expressly exclude three categories "unless directly resulting from other physical damage not excluded." (Capitalization omitted.) In relevant part, the three enumerated exclusions are: "1) contamination, and any cost due to contamination . . .[;] 2) shrinkage[;] and (3) changes in color, flavor, texture or

---

complaint compels the conclusion that the presence of the virus on surfaces was insufficient, in the early days of the pandemic, to cause closure by itself.

[7] The policies' communicable disease coverage does not require physical loss or damage, and thus may be triggered notwithstanding this exclusion.

14

finish."[8] (Boldface omitted.) Reading the list together and in context, it is clear that the three exclusions are risks of physical loss or damage that are excluded from the all-risks coverage. (Cf. *Monarch Casino*, *supra*, 85 F.4th at p. 1040 ["the policy provides all-risk and business-interruption coverage except as excluded by the policy[] [a]nd . . . excludes coverage under its Contamination Exclusion"]; see also *JRK Property Holdings, Inc. v. Colony Ins. Co.* (2023) 96 Cal.App.5th 1, 6-7, 18-20 [pathogen exclusion unambiguously precluded coverage for coronavirus losses].)

"[C]ontamination" is "any condition of property due to the actual or suspected presence of . . . virus . . . ." (Boldface omitted.) There is no dispute that the risk of physical loss or damage on which plaintiffs rely constitutes contamination within the meaning of the policy; plaintiffs dispute only whether earnings lost due to such damage are excluded.

We reject plaintiffs' contention that the exclusion of "contamination, and any cost due to contamination" makes the policy ambiguous.[9] (See generally *Schmier v. City of*

---

[8] Plaintiffs contend that the mortality and disease exclusion in *Marina Pacific* swept more broadly than the one in this case and nevertheless did not bar the claims in that case. (See *Marina Pacific*, *supra*, 81 Cal.App.5th at pp. 112-113.) But the "most reasonable" interpretation of the mortality and disease exclusion was that it applied to "losses resulting from a *death* caused by a virus or other disease, and not more broadly any otherwise covered losses resulting from a virus or disease." (*Id*. at p. 113, italics added.) Put differently, viral contamination of property was beyond the scope of the exclusion. Here, viral contamination of property is clearly within the scope, and the only question is what losses flowing from such contamination are covered. *Marina Pacific* is not helpful on this point.

[9] The parties have identified divergent federal authorities addressing, at the pleadings stage, whether the contamination exclusion is ambiguous. (Compare *Monarch Casino*, *supra*, 85 F.4th at pp. 1039-1042; *Out West*, *supra*, 2022 WL 4007998 at p. *2 [because policy excludes contamination, exclusion extends to losses caused by the presence of the virus]; *Dana Inc. v. Zurich American Ins. Co.* (6th Cir. July 6, 2022, 21-4150) 2022 WL 2452381, at p. *3 (*Dana*) [time element loss caused by actual or suspected presence of virus subject to policy's exclusion for contamination and related expenses]; with *Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company* (C.D. Cal. Feb. 3, 2022, No. LA CV21-00862 JAK (KSx)) 2022 WL 390712, at pp. *7-

15

*Berkeley* (2022) 76 Cal.App.5th 549, 558 [" ' "[W]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement. So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement" ' "].) Plaintiffs begin from a reasonable premise—if excluding "contamination" were by itself sufficient to remove contamination from the scope of coverage for "all risks of physical loss or damage" then "and any cost due to contamination" would be surplusage. Even so, taking the policies as a whole, plaintiffs' construction of the provision—that "contamination, and any cost due to contamination" excludes only (1) the diminution of property value due to contamination; and (2) any cost due to contamination—is untenable. Nothing in the structure of the relevant section or the definition of "contamination" supports the inference that "contamination" refers to a type of loss, as opposed to a type of "risk"—that the property's condition will be altered by viral contamination—from which diverse losses may flow. Plaintiffs' construction would require us to disregard the structure of the contract—its coverage of "all risks of physical loss or damage, except as hereinafter excluded" and subsequent exclusion of several risks, including contamination—and to tailor the definition of "contamination" to fit

---

*8 [physical damage caused by COVID-19 contamination "directly results from other physical damage not excluded" by policy's ambiguous contamination exclusion]; *Thor Equities, LLC v. Factory Mutual Ins. Co.* (S.D.N.Y. 2021) 531 F.Supp.3d 802, 808-809 [finding the contamination exclusion ambiguous, in isolation]; *The Regents of the University of Colorado v. Factory Mutual Ins. Co.* (D. Colo. Jan. 26, 2022, No. 2021CV30206) 2022 WL 245327, at pp. *4-*5; see also *Sacramento Downtown Arena LLC v. Factory Mutual Ins. Co.* (E.D. Cal. 2022) 637 F.Supp.3d 865, 871-872 [reasoning that contamination exclusion could be reasonably interpreted not to encompass viruses, to the extent a communicable disease can cause non-excluded physical damage].) Given our own analysis, we naturally find *Monarch Casino*, *Dana*, and *Out West* persuasive with respect to the contamination exclusion—accepting that COVID-19 causes physical damage, that physical damage is subject to the viral contamination exclusion.

plaintiffs' coverage claim in lopsided hindsight bereft of textual support. This we are unable to do. Where there is only one reasonable interpretation of contractual language, the contract is unambiguous such that the parties' dispute may be resolved at the pleading stage. (See *George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1128 [proper to sustain general demurrer without leave to amend where insurance contract is not reasonably susceptible to the meaning alleged in the complaint].)

Plaintiffs agree that the policies exclude the risk of radioactive contamination, which is addressed in a distinct policy exclusion. Plaintiffs argue that if the policies excluded the risk of viral contamination, the exclusion applicable to viral contamination would have been in the same form as the exclusion applicable to radioactive contamination. We disagree.

The policies' enumerated exclusions include three groups of excluded perils subject to different treatment. As to one such group (including "nuclear reaction or nuclear radiation or radioactive contamination"), the "[p]olicy excludes loss or damage directly or indirectly caused by or resulting from any of [the listed perils] regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss." In contrast, "contamination," "shrinkage," and "changes in color, flavor, texture or finish" are designated for a more qualified exclusion: the "Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy." The difference between these sub-sections is not whether they exclude risks—both do—but the scope of the exclusion. In the former case, the exclusion applies even where loss or damage is "indirectly caused by or result[s] from" the listed perils. In the latter, the exclusion does not apply if the loss or damage directly results from other physical damage not excluded. The difference between the treatment of radioactive contamination and viral contamination is immaterial because plaintiffs did not allege contamination resulting from other physical damage not excluded, but contamination as itself physical damage.

17

Plaintiffs suggest that the policies are ambiguous because their language could have more clearly indicated to the insured that viral contamination is not the "type" of physical loss or damage used to designate the scope of time element coverage. That an exclusion "could have been written differently does not necessarily mean . . . it is ambiguous when read in the context of the policy as a whole." (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2010) 184 Cal.App.4th 196, 207.) In interpreting the policy before us, we do not "read into the policy what [the insurer] has omitted." (See *Safeco Ins. Co. of America v. Robert S.* (2001) 26 Cal.4th 758, 764.) It follows from the contamination exclusion that time element or business interruption losses flowing from viral contamination are not covered. For coverage, time element loss must directly result "from physical loss or damage of the type insured." Because viral contamination is excluded from the type of physical loss or damage insured, it is not a predicate for time element coverage.

E. *Civil Authority Coverage*

The civil authority coverage requires an order of civil authority that is "the direct result of physical damage of the type insured." Thus, it requires both "physical damage of the type insured" and a nexus between that covered damage and the order. As such, it echoes the coverage and causation questions addressed above. Having concluded that physical damage consisting of viral contamination is subject to the contamination exclusion, it, once again, follows that viral contamination is not "physical damage of the type insured." Accordingly, the civil authority coverage does not apply.

**III.   DISPOSITION**

The writ petition is denied. In the interests of justice, the parties shall bear their own costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

18

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

BAMATTRE-MANOUKIAN, J.

*San Jose Sharks LLC et al. v. Superior Court*
H050441

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| | Court No.: 21CV383780 |
| | |
| Trial Judge: | The Honorable |
| | Sunil R. Kulkarni |
| | |
| Attorneys for Petitioner | Covington & Burling |
| San Jose Sharks LLC et al.: | |
| | Rani Gupta |
| | Thomas Martecchini |
| | Sabrina T. McGraw |
| | Benedict M. Lenhart |
| | Matthew J. Schlesinger |
| | Kristin M. Cobb |
| | Allison C. Hawkins |
| | |
| Attorneys for Real Parties in Interest | Simpson Thacher & Bartlett |
| Factory Mutual Insurance Company: | |
| | Chet A. Kroneberg |
| | Bryce L. Friedman |
| | Isaac Rethy |
| | |
| | Carlson, Calladine & Peterson |
| | |
| | Joyce C. Wang |
| | |
| Attorneys for Amicus Curiae | California Medical Association |
| California Medical Association: | Center for Legal Affairs |
| | Jamie Ostroff |
| | Shari Covington |

*San Jose Sharks LLC et al. v. Superior Court*
H050441